J-A02013-17

2017 PA Super 328

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA AND PACIFIC EMPLOYERS INSURANCE COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ONEBEACON INSURANCE COMPANY F/K/A CGU INSURANCE COMPANY F/K/A GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA | |
| Appellant | No. 1280 EDA 2016 |

Appeal from the Judgment Entered April 26, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2012 No. 002928

BEFORE:  OTT, J., RANSOM, J., and FITZGERALD, J.[*]

OPINION BY OTT, J.:                    **FILED OCTOBER 17, 2017**

OneBeacon Insurance Company F/K/A CGU Insurance Company F/K/A

General Accident Insurance Company of America (hereinafter "OneBeacon"),

appeals from the judgment entered on April 26, 2016,[1] in the Philadelphia

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that OneBeacon filed its notice of appeal from the March 15, 2016, order denying its post-trial motions.  **See** Notice of Appeal, 4/14/2016. However, "an appeal properly lies from the entry of judgment, not from the denial of post-trial motions."  **Gold v. Rosen**, 135 A.3d 1039, 1040 n.1 (Pa. Super. 2016).  In the present case, judgment was subsequently entered on
*(Footnote Continued Next Page)*

County Court of Common Pleas in this action seeking reinsurance[2] coverage for defense expenses. Following a non-jury trial, the court entered judgment against OneBeacon and in favor of Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America (hereinafter "Century"), in the amount of $4,772,520.44, plus prejudgment interest, and in favor of Pacific Employers Insurance Company (hereinafter "PEIC"), in the amount of $2,426,478.42, plus prejudgment interest.[3] On appeal, OneBeacon challenges the ruling of the trial court that the reinsurance facultative certificates[4] at issue provided

_(Footnote Continued)_ ————————————

the verdict on April 26, 2016. Therefore, we will consider this appeal as properly filed after the entry of judgment. **See id. See also** Pa.R.A.P. 905(a)(5). Further, we direct the Prothonotary to correct the caption accordingly.

[2] Reinsurance is defined as:

> the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss[.]

**Reid v. Ruffin**, 469 A.2d 1030, 1033 (Pa. 1983) (citation and emphasis omitted). In other words, it is insurance coverage for insurance companies.

[3] We note Century and PEIC are proceeding jointly in this appeal, represented by the same attorneys. Therefore, we will refer to them collectively as "Century/PEIC."

[4] "Facultative reinsurance reinsures one particular risk," as opposed to "treaty reinsurance [which] reinsures a program, for example, a collection of homeowners' risks underwritten by a ceding company." **Koken v. Legion**
_(Footnote Continued Next Page)_

coverage for defense expenses in excess of the liability cap, and that Century/PEIC were entitled to interest on certain proofs of loss issued prior to early 2013. For the reasons below, we affirm.

The relevant facts and procedural history underlying this appeal are as follows. In 1983, Century's predecessor issued an Excess Blanket Catastrophe Liability Policy to a subsidiary of Formosa Plastics Corporation that provided $25,000,000.00 in umbrella liability for covered losses. During the same period, PEIC issued a similar policy to Gould Pumps, Inc.[5] Both of the underlying policies included a "second obligation to provide coverage for defense costs." Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at 2. Thereafter, Century's predecessor and PEIC both obtained facultative certificates from OneBeacon's predecessor to reinsure a certain layer of the underlying Formosa and Gould policies. Both the underlying policies and the facultative certificates were renewed the following year; Century's certificate was renewed *via* an endorsement, and PEIC was issued a new certificate.

Each of the certificates at issue consists of a double-sided, pre-printed form and contains the identical, relevant, policy language. The front of the

_____

*(Footnote Continued)* ———————————

*Ins. Co.*, 831 A.2d 1196, 1210 (Pa. Commw. 2003), *aff'd*, 878 A.2d 51 (Pa. 2005).

[5] *See* Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶¶ 3-11.

certificate names the reinsured, *i.e.* Century's predecessor or PEIC, and thereafter states: "In consideration of the payment of the premium and **subject to the general conditions set forth on the reverse side** hereof, the reinsurer does hereby reinsure" the underlying policy. Complaint, 7/23/2012, Exhibit A, Certificate 4513 (hereinafter "Certificate") (emphasis added).[6] After providing information regarding the underlying policy, the certificate includes four sections under the heading, "Details of Reinsurance Afforded." ***Id.*** Section I, II, and III list the type of insurance, the underlying policy limits, and the ceding company's retention. ***See id.*** Section IV is entitled "Reinsurance Accepted" and provides the reinsurance policy limit for the certificate.[7] ***Id.***

The back of each certificate lists nine general conditions, three of which are relevant to this appeal:

> 1.  The [Reinsured] Company [Insurance Company of North America] warrants to retain for its own account, subject to Treaty Reinsurance, the amount of liability specified in Section III, and **the liability of the Reinsurer [OneBeacon] specified in Section IV shall follow that of the Company and expect as otherwise specifically provided herein, shall**

---

[6] The facultative certificates issued to PEIC are attached to the complaint at Exhibits B and C. Since, as noted above, the relevant certificate language is identical, we will refer only to the certificate issued to Century.

[7] The Century certificate issued in 1983 included a "Reinsurance Accepted" amount of $3,000,000.00, and the 1984 endorsement provided for the same coverage. ***See*** Complaint, 7/23/2012, Exhibit A. The PEIC certificates included a "Reinsurance Accepted" amount of $2,000,000.00 for 1983, and $3,000,000.00 for 1984. ***See*** Complaint, 7/23/2012, Exhibit B, C.

**be subject in all respects to all the terms and conditions of the Company's policy.** The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this certificate, and **shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.**

\* \* \* \*

3. **All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, who shall be bound to pay its proportion of such settlements, and in addition thereto**, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, **its proportion of expenses**, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of such claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award.[8]

4. Payment of its proportion of loss and expense paid by the Company will be made by the Reinusurer to the Company promptly **following receipt of proof of loss**.

*Id.* at 2 (emphasis supplied).

Both Century and PEIC paid significant amounts in losses to their underlying insureds for asbestos-related claims pursuant to the 1983 and

---

[8] General Conditions (1) and (3) are typically referred to as "following form" or "follow the fortunes" clauses in reinsurance contracts.

> The doctrine of "follow the fortunes" has been defined as meaning that "the reinsurer will follow the fortunes or be placed in the position of the [insurer]." Basically, the doctrine burdens the reinsurer with those risks which the direct insurer bears under the direct insurer's policy covering the original insured.

*Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co.*, 903 F.2d 910 (2nd Cir. 1990) (citations omitted).

1984 underlying policies. When OneBeacon failed to promptly pay Century/PEIC under the facultative certificates, the companies jointly filed a breach of contract and declaratory judgment action against OneBeacon on July 23, 2012. While the action was pending, OneBeacon paid Century/PEIC the limits listed in the "Reinsurance Accepted" section of the facultative certificates, but refused to pay any amount above that limit for defense expenses.

The case proceeded through discovery. On January 20, 2015, OneBeacon filed a motion for summary judgment. It argued that it had already paid Century/PEIC "$11 million, a sum equal to the total dollar amounts stated as the 'Reinsurance Accepted' in the facultative reinsurance certificates at issue in this case[,]" and that under authoritative case law, and the unambiguous language of the certificates at issue, it was not obligated to pay defense expenses "in excess of the stated Reinsurance Accepted amount[.]" OneBeacon's Motion for Summary Judgment, 1/20/2015, at ¶¶ 1-2. OneBeacon further argued: (1) Century/PEIC were collaterally estopped from seeking defense costs in excess of the Reinsurance Accepted limits as a result of "prior adverse decisions" rendered against them, and (2) it owed no interest to Century/PEIC on the $11 million previously submitted because it "had no duty to pay either [company] prior to the respective dates of OneBeacon's actual payments." *Id.* at ¶¶ 3-4. On

January 21, 2015, Century/PEIC filed a motion for partial summary judgment on the issue of prejudgment interest.[9]

The trial court entered two orders disposing of the motions on March 27, 2015: (1) denying OneBeacon's motion for summary judgment, and (2) granting Century/PEIC's motion for partial summary judgment. **See** Orders, 3/27/2015. With regard to OneBeacon's motion, the trial court determined: (1) the certificates were ambiguous, and, consequently, Century/PEIC could present extrinsic evidence at trial, and (2) Century/PEIC were not collaterally estopped from asserting their claims based on prior decisions. **See** Trial Court Opinion, 3/27/2015 (OneBeacon's Motion), at 5-8. The court granted Century/PEIC's motion for partial summary judgment, concluding OneBeacon had a duty to pay Century/PEIC promptly following receipt of proof of loss. **See** Trial Court Opinion, 3/27/2015 (Century/PEIC's Motion), at 4-6. Accordingly, the court found both Century and PEIC were entitled to prejudgment interest, Century in the amount of $275,760.45 and PEIC in the amount of $152,071.35. **See id.** at 6. Judgment was entered on these amounts in favor of Century/PEIC and against OneBeacon on April 9, 2015.

_____

[9] Century/PEIC had sought summary judgment on this issue twice before in motions filed in July of 2012 and December of 2013. They withdrew the first motion without prejudice in October of 2013. On April 10, 2014, the trial court denied the second motion, concluding there were genuine issues of material fact precluding the entry of summary judgment. **See** Order, 4/10/2014. When ruling on the third motion, the court found "[t]hose questions no longer remain." **See** Trial Court Opinion, 3/27/2015 (Century/PEIC's Motion), at 1 n.1.

On April 27, 2015, OneBeacon filed two motions, requesting the trial court amend each of its March 27, 2015, orders to certify them for an interlocutory appeal pursuant to 42 Pa.C.S. § 702(b).  The trial court denied OneBeacon's motions to amend on May 21, 2015, and this Court subsequently denied OneBeacon's petition for review.  **See Century Indemnity Co. et al. v. OneBeacon Insurance Co. et. al.**, 95 EDM 2015, Order, 7/29/2015.  A three-day, non-jury trial commenced on January 11, 2016.  On February 23, 2016, the trial court entered an order, accompanied by findings of fact and conclusions of law, finding in favor of Century/PEIC, and against OneBeacon.  **See** Order, 2/23/2016.[10]  OneBeacon filed post-

_____

[10] Specifically, the court found in favor of Century and against OneBeacon "in the amount of $4,772,520.44 plus pre-judgment interest at the statutory rate of 6% per annum in the amount of $431,497.17 (through January 11, 2016) and additional pre-judgment interest in the amount of $784.52 for each day between January 12, 2016 and the date of this finding."  Order 2/23/2016, at 1.  With regard to PEIC, the court entered a finding against OneBeacon "in the amount of $2,426,478.42 plus pre-judgment interest at the statutory rate of 6% per annum in the amount of $363,262.43 (through January 11, 2016 and additional pre-judgment interest in the amount of $398.87 for each date between January 12, 2016 and the date of this finding."  **Id.** at 1-2.

trial motions on March 3, 2016, which the trial court denied on March 15, 2016. This timely appeal followed.[11, 12]

In its first issue, OneBeacon argues the trial court erred in denying its motion for summary judgment and finding the facultative certificates at issue were ambiguous as to whether the "Reinsurance Accepted" amount capped OneBeacon's liability for both losses and defense expenses. **See** OneBeacon's Brief at 17-32.

Our review of a trial court's order denying a motion for summary judgment is well-established:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. **Pennsylvania State University v. County of Centre**, 532 Pa. 142, 615 A.2d 303, 304 (1992). Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. **Skipworth v. Lead Industries Ass'n, Inc.,** 547 Pa. 224, 690 A.2d 169, 171 (1997). Our scope of

---

[11] We note OneBeacon filed three notices of appeal: (1) from the April 9, 2015, entry of partial judgment (Docket No. 1282 EDA 2016); (2) from the March 27, 2015, order denying its motion for summary judgment (Docket No. 1281 EDA 2016); and (3) from the March 15, 2016, order denying its post-trial motions (Docket No. 1280 EDA 2016). By order entered June 7, 2016, this Court, *sua sponte*, quashed the appeals at Docket Nos. 1281 EDA 2016 and 1282 EDA 2016, as duplicative.

[12] The trial court did not direct OneBeacon to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Although the court filed an opinion pursuant to Pa.R.A.P. 1925(a) on May 9, 2016, it relied on its prior opinions disposing of the parties' motions for summary judgment, as well as its February 23, 2016, findings of fact and conclusions of law. **See** Trial Court Opinion, 5/9/2016, at 1-2.

review of a trial court's order granting or denying summary judgment is plenary, **O'Donoghue v. Laurel Savings Ass'n**, 556 Pa. 349, 728 A.2d 914, 916 (1999), and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. **Cochran v. GAF Corp.,** 542 Pa. 210, 666 A.2d 245, 248 (1995).

**Pappas v. Asbel**, 768 A.2d 1089, 1095 (Pa. 2001), *cert. denied sub nom*,

**United States Healthcare Systems of Pennsylvania, Inc. v. Pennsylvania Hosp. Ins. Com., et al.**, 536 U.S. 938 (2002).

Here, OneBeacon's argument focuses on an interpretation of the parties' contract, in this case, the facultative certificates.

> In interpreting the terms of a contract, the cardinal rule followed by courts is to ascertain the intent of the contracting parties. If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties. If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper. A contract's terms are considered ambiguous "'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'"

**Com. ex rel. Kane v. UPMC**, 129 A.3d 441, 463 (Pa. 2015) (internal citations omitted).

OneBeacon asserts the certificates at issue are unambiguous, and specifically provide that "the dollar amount listed as the 'Reinsurance Accepted' in Section IV on the front page constitutes the **maximum amount** for which OneBeacon can be liable under the certificate, including for all expenses that can be billed to the reinsurer." OneBeacon's Brief at 17-18 (emphasis added). It insists the trial court's contrary conclusion is based upon the court's misinterpretation of the certificate language, and its

non-application of controlling caselaw, in particular the Second Circuit's seminal decision in **Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co.**, 903 F.2d 910 (2nd Cir. 1990).

Because our research confirms the trial court's conclusion that "this is a case of first impression for Pennsylvania courts," [13] we begin with an examination of **Bellefonte**, which is the leading decision concerning whether a reinsurer is obligated to pay defense expenses incurred in the underlying litigation which exceed the "Reinsurance Accepted" limit stated on the facultative certificate.[14]

The **Bellefonte** case arose during litigation over the Dalkon Shield intrauterine device. **See Bellefonte**, **supra**, 903 F.2d at 911. The manufacturer of the device filed a declaratory judgment action against Aetna, the underlying insurer, seeking a determination that Aetna was required to pay defense costs even if those costs exceeded the liability limits stated in the policies. **See id.** Subsequently, the parties settled the claim and "Aetna agreed to pay an amount substantially in excess of the cap

---

[13] Trial Court Opinion, 3/27/2015 (OneBeacon's Motion), at 4.

[14] Although decisions of the Second Circuit Court of Appeals, the federal district courts, and our sister states are not binding on this Court, they may provide persuasive authority, particularly where, as here, neither this Court nor the Pennsylvania Supreme Court has considered this issue. **See Umbelina v. Adams**, 34 A.3d 151, 159-160 n.2-n.3 (Pa. Super. 2011), *appeal denied*, 47 A.3d 848 (Pa. 2012).

stated in the policies." *Id.* Aetna's six reinsurers, however, did not participate in the settlement.

Thereafter, Aetna asked its reinsurers to pay their proportionate share of the defense costs. The reinsurers filed a declaratory judgment action, requesting the court "limit[] their liability to the amount stated in the reinsurance certificates." *Id.* The district court granted the reinsurers' motion for summary judgment, holding the "Reinsurance Accepted" amount was an "overall limitation and that the reinsurance certificates were cost-inclusive and capped by that amount." *Id.* at 912. Aetna then appealed to the Second Circuit, which affirmed the decision of the district court.

In affirming that decision, the *Bellefonte* Court first rejected Aetna's claim that the "follow the fortunes" doctrine "obligates a reinsurer to indemnify a reinsured for all of the reinsured's defense expenses and costs, even when those expenses and costs" exceed the "Reinsurance Accepted" amount listed on the certificate. *Id.* Similar to "General Condition (1)" in the present case,[15] the certificates in *Bellefonte* included a provision that stated: "The Company warrants to retain for its own account ... the amount of liability specified ... above, and the liability of the Reinsurer specified ... above [i.e., amount of reinsurance accepted] **shall follow that of the Company**[.]" *Id.* at 911 (emphasis added). The Second Circuit held the

---

[15] *See* Certificate at 2, General Condition (1).

"follow the fortunes" clause did not "render a reinsurer liable for an amount in excess of the bargained-for coverage." *Id.* at 913. The Court explained:

> To read the reinsurance certificates in this case as Aetna suggests—allowing the "follow the fortunes" clause to override the limitation on liability—would strip the limitation clause and other conditions of all meaning; the reinsurer would be obliged merely to reimburse the insurer for any and all funds paid. Such a reading would be contrary to the parties' express agreement and to the settled law of contract interpretation.
>
> The "follow the fortunes" clauses in the certificates are structured so that they coexist with, rather than supplant, the liability cap. To construe the certificates otherwise would effectively eliminate the limitation on the reinsurers' liability to the stated amounts.

*Id.* (citation omitted).

Next, the ***Bellefonte*** Court also rejected Aetna's argument that the certificates required the reinsurers to pay defense expenses "in addition" to liability limits. *Id.* Similar to "General Condition (3)" in the present case,[16] the fourth provision in the Aetna certificates stated, in relevant part:

> All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, **and in addition thereto**, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, **its proportion of expenses** ... incurred by the Company in the investigation and settlement of claims or suits...."

*Id.* at 911 (emphasis supplied). The ***Bellefonte*** Court found the "'in addition thereto' provision merely outlines the different components of

---

[16] ***See*** Certificate at 2, General Condition (3).

potential liability under the certificate [and] does not indicate that either component is not within the overall limitation." *Id.* at 913.

In doing so, the ***Bellefonte*** Court also emphasized the "subject to" clause in the certificates, which made all of the provisions subject to the liability limits. Specifically, the first provision in the Aetna certificates stated, in pertinent part, that the reinsurer "[d]oes hereby reinsure Aetna ... **subject to** the terms, conditions and **amount of liability set forth herein**, as follows[.]" *Id.* at 911 (emphasis supplied). The Second Circuit held:

> Whatever the demand, the reinsurers' entire obligation is quantitatively limited by the dollar amount the reinsurers agreed to reinsure. Once the reinsurers have paid up to the certificate limits, they have no additional liability to Aetna for defense expenses or settlement contributions. **Any other construction of the reinsurance certificates would negate the phrase "the reinsurer does hereby reinsure Aetna ... *subject to the ... amount of liability set forth herein.*"** (emphasis added). The reinsurers are liable only to the extent of the risk they agreed to reinsure. They cannot be liable for the insurer's action in excess of the agreement.
>
> We hold that the "in addition thereto" language of the fourth provision of the reinsurance certificates does not exempt defense costs from the overall limitation on liability set forth in the first two provisions of each certificate. Rather, we hold that these costs are "subject to" the express cap on liability in each certificate.

*Id.* at 914 (emphasis supplied).

Most courts that have considered this issue have relied upon the ***Bellefonte*** decision and held that reinsurers are not required to pay defense expenses that exceed the "Reinsurance Accepted" amount listed on the certificates. The Second Circuit considered the issue again in ***Unigard Sec.***

- 14 -

*Ins. Co. Inc. v. North River Ins. Co.*, 4 F.3d 1049 (2nd Cir. 1993). There, the reinsured/appellant attempted to distinguish *Bellefonte* by relying on a "follow the form" clause in its certificate, which provided that "the liability of the reinsurers, '*except as otherwise provided by this Certificate,* shall be subject in all respects to all the terms and conditions of [the underlying policy]." *Id.* at 1070-1071 (emphasis in original). The reinsured/appellant argued that this clause, not considered by the *Bellefonte* Court, was significant because the reinsured was ordered to pay expenses *via* binding arbitration, rather than pursuant to a settlement agreement which the reinsurer did not participate in, as in *Bellefonte*. However, the Court of Appeals did not find the facts in *Unigard* distinguishable. Rather, it emphasized the certificate at issue contained the same "subject to" clause as in *Bellefonte*, which limited all of the reinsurer's obligations in the certificate to the amount listed as "Reinsurance Accepted." *Id.* at 1071. Moreover, the *Unigard* Court noted: "The efficiency of the reinsurance industry would not be enhanced by giving different meanings to identical standard contract provisions depending upon idiosyncratic factors in particular lawsuits." *Id.*

The United States District Court for the Eastern District of Pennsylvania relied upon *Bellefonte* and *Unigard* in *Aetna Cas. & Sur. Co. v. Philadelphia Reinsurance Corp.* ("*PRC*"), No. 94-2683, 1995 WL 217631 (E.D. Pa. 1995), and *Pacific Employers Ins. Co. v. Global*

*Reinsurance Corp. of America* ("*Global/PEIC I*"), No. 09-6055, 2010 WL 1659760 (E.D. Pa. 2010).

In both cases, the district court ruled in favor of the reinsurer, finding the language in the facultative certificates at issue was nearly identical to the language of the certificates in *Bellefonte* and *Unigard*. *See PRC*, *supra*, 1995 WL 217631 at *1; *Global/PEIC I*, *supra*, 2010 WL 1659760, at *1. Both certificates included a provision that required the reinsurer to pay its proportionate share of losses, and "in addition thereto" its proportionate share of expenses. *PRC*, *supra*, 1995 WL 217631 at *1; *Global/PEIC I*, *supra*, 2010 WL 1659760, at *1. Moreover, both certificates included an introductory clause that stated the latter provisions were made "in consideration of the payment of the premium and *subject to the … amount [or limits] of liability* set forth herein[.]" *PRC*, *supra*, 1995 WL 217631 at *1; *Global/PEIC I*, *supra*, 2010 WL 1659760, at *1. (citation omitted and emphasis in original).

In *PRC*, the district court granted summary judgment in favor of the reinsurer, finding that the reinsured, Aetna, was bound by the ruling in *Bellefonte* since it was also a party in that case. *PRC*, *supra*, 1995 WL 217631 at *4. Aetna attempted to distinguish the facts in *Bellefonte* by asserting that the underlying policies were different: in *Bellefonte*, the underlying insurance policy was cost-inclusive, while in *PRC*, the underlying policy was cost-supplemental. *See id.* However, the district court rejected this claim, stating: "The *Bellefonte* decision did not depend on whether or

not the underlying policy included costs in the limit of liability, i.e., was cost-inclusive." *Id.* at *3 (footnote omitted). The court also refused to consider Aetna's evidence regarding custom in the reinsurance industry because it determined the certificate at issue was unambiguous. *See id.*

In *Global/PEIC I*, the district court granted the reinsurer's motion for judgment on the pleadings, noting:

> [I]f the parties intended to exclude expenses from the total liability limit, they could have made that clear through [the "Reinsurance Accepted"] language or another part of the Facultative Certificate. They did not do so.

*Id.* at *3. Consistent with prior case law, the *Global/PEIC I* Court found the "in addition thereto" provision "merely outlined the two separate proportions to losses and expenses that [the reinsurer] is obligated to pay[.]" *Id.* at *4. Moreover, the Court emphasized the "subject to" clause which made all of the provisions in the certificate, including the one providing for the payment of expenses "in addition" to losses, subject to the liability limit.[17] *Id.*

_____

[17] However, as we will discuss *infra*, the ruling in *Global/PEIC* concerning the cap on expenses is of limited precedential value. On appeal after further proceedings, the Third Circuit reversed the judgment against the reinsurer and remanded for entry of a "judgment of non-liability" based on the reinsured's failure to comply with a condition precedent. *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am.* ("*Global/PEIC II*"), 693 F.3d 417, 440 (3d Cir. 2012). Significantly, the Third Circuit declined to review the reinsured's challenge to the expense cap issue finding the claim "moot." *Id.* at 425 n.3.

It also merits mention that the New York Court of Appeals followed the *Bellefonte* and *Unigard* decisions in *Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*, 822 N.E.2d 768 (N.Y. 2004), and held the reinsurer was not required to pay "loss adjustment expenses in excess of the stated limit in the reinsurance policy." *Id.* at 771. In that case, the reinsurance policy explicitly provided a "limit" of "$7 million per occurrence." *Id.* at 771. The *Excess* Court concluded: "Once the reinsurers have paid the maximum amount stated in the policy, they have no further obligation to pay [the reinsured] any costs related to loss adjustment expenses." *Id.*

Further, the Court rejected the reinsured's attempt to distinguish the case from *Bellefonte* and its progeny because the underlying contract at issue was property insurance rather than liability insurance. *See id.* at 772. Moreover, the *Excess* Court found the parties could have anticipated "the possibility of incurring loss adjustment expenses in settling a claim," and "nothing prevented [the reinsured] from insuring that risk either by expressly stating that the defense costs were excluded from the indemnification limit or otherwise negotiating an additional limit for loss adjustment expenses[.]" *Id.* The *Excess* Court stated: "Failing this, the reinsurers were entitled to rely on the policy limit as setting their maximum risk exposure." *Id. See also Utica Mut. Ins. Co. v. Clearwater Ins. Co.* ("*Clearwater*"), No. 6:13-CV-1178, 2014 WL 6610915 (N.D. N.Y. 2014) (relying upon *Bellefonte* and *Excess* in granting summary judgment in favor of reinsurer; certificate was unambiguous, and did not expressly

exclude costs from liability cap); ***Continental Casualty Co. v. Midstates Reinsurance Corp.***, 24 N.E. 3d 122, 127-128 (Ill. App. Ct., 1st Dist. 2014) (affirming order granting judgment on the pleadings to reinsurer; relying upon "similar" provisions in ***Bellefonte***, to find certificate language "clearly and unambiguously" caps expenses under policy limit), *appeal denied*, 31 N.E. 3d 767 (Ill. 2015).

Nevertheless, both the Second Circuit Court of Appeals and the United States District Court for the Northern District of New York have found the language in other facultative certificates ambiguous, thereby precluding the entry of summary judgment. ***See Utica Mut. Ins. Co. v. Munich Reinsurance America Inc.*** ("***Munich***"), 594 Fed.Appx. 700 (2nd Cir. 2014); ***Utica Mut. Ins. Co. v. R & Q Reinsurance Co.*** ("***R & Q***"), 2015 WL 4254074 (N.D. N.Y. 2015).

In ***Munich***, the certificate explicitly stated the reinsurer "agrees to indemnify [the reinsured] against **losses or damages** … subject to the reinsurance limits shown in the Declarations[.]" ***Munich***, ***supra***, 594 Fed.Appx. at 703 (emphasis supplied and citation omitted). The certificate also included a later provision making the reinsurer "liable for its proportion of allocated loss expenses incurred by the [reinsured] in the same ratio that the Reinsurer's share of the settlement or judgment bears to the total amount[.]" ***Id.***

Based on the above provisions, the ***Munich*** Court found the language in the certificates was ambiguous as to whether or not the reinsurer was

obligated to pay defense expenses in excess of the stated liability limits. On the one hand, the Court stated:

> the Certificate can be read to exclude expenses from [the reinsurer's] $5 million limit of liability. The fact that [the reinsurer's] obligation to indemnify [the reinsured] against "losses or damages" is expressly made "subject to" the Certificate's limit of liability suggests that the parties intended to exclude [the reinsured's] liability for expenses—which is *not* expressly made "subject to" the limit of liability—from that limit.

*Id.* However, the Court also noted that while the "subject to" provision did not expressly include settlement payments, the reinsured "does not argue that the limit of liability excludes settlements." *Id.* Accordingly, the Court found "the Certificate is ambiguous as to whether its limit of liability includes expenses" and remanded for the district court's consideration of extrinsic evidence. *Id.*

In doing so, the Court of Appeals specifically found the facts in *Bellefonte*, *Unigard* and *Excess* distinguishable. The Court opined:

> In holding that the Certificate's limit of liability unambiguously includes expenses, the district court [herein] concluded that three prior decisions—two from this Court and one from the New York Court of Appeals—established a presumption that limits of liability in facultative reinsurance certificates are unambiguously expense-inclusive. **But those decisions interpreted different policies than the one at issue in this case.** The former two cases [*Bellefonte* and *Unigard*] turned on a provision in the policies at issue that expressly made all of the reinsurers' obligations "subject to" the limit of liability; **they did not hold that a limit of liability, without such "subject to" language, is presumptively expense-inclusive**. In the third case, *Excess* … the Court of Appeals **arguably extended** the rationale of our earlier decisions and suggested that a limit of liability, standing alone, *is* presumptively expense-inclusive because it serves to cap a reinsurer's total exposure (for losses

- 20 -

and expenses) at a specific, negotiated amount. This presumption may best reflect the contracting parties' intentions in the mine run of cases, but in the reinsurance context as in any other, a party is bound by the terms to which it has agreed. And unlike the district court, **we do not read *Excess* as holding that any presumption of expense-inclusiveness can be rebutted only through express language or a separate limit for expenses.** As we have explained, the Certificate's statement that "losses or damages" are "subject to" the limit of liability reasonably implies that expenses are not. Although this negative implication is not strong enough—in the context of the Certificate as a whole—to demonstrate that expenses are unambiguously excluded from the limit of liability, we think it is sufficient to render the Certificate ambiguous, even in light of *Excess*.

*Id.* at 704 (emphasis supplied and internal citations omitted). Therefore, the *Munich* Court interpreted the certificate based on the language provided therein, and rejected the presumption created by the *Excess* Court that defense costs are capped by the liability limits unless they are explicitly excluded elsewhere in the certificate.

In *R & Q*, *supra*, the District Court for the Northern District of New York considered whether defense costs were capped by the liability limits when the certificate at issue provided, *inter alia*: (1) the reinsurance was "subject to the terms hereon and the general conditions set forth on the reverse side hereof[;]" (2) the reinsurer agreed to indemnify the reinsured "against loss or damage … subject to the Reinsurance Accepted limits shown in the Declarations[;]" and (3) when a reinsured settles an underlying claim, should the reinsured's "policy limit include expenses, the Reinsurer's maximum amount of liability shall be as stated in Item 4, of the Declarations." *R & Q*, *supra*, 2015 WL 4254074, at *1-2.

- 21 -

The **R & Q** Court first held the "subject to" clause at issue, while similar to the language in **Bellefonte** and **Unigard**, was nonetheless distinguishable. The Court explained:

The preamble in this case makes the reinsurer's obligations "subject to the terms hereon and the general conditions" of the Certificate. This "subject to" clause is, as R & Q argues, *similar* to those in **Bellefonte** and **Unigard** because one of the "terms hereon" is the amount of reinsurance accepted. But the "subject to" clause in this case does not unambiguously cap R & Q's liability for expenses to that policy limit because it does not expressly refer to the liability limit and, as set forth below, two of the conditions in the Certificate can be interpreted to support Utica's claim that R & Q is liable for expenses in excess of the policy limit.

*Id.* at *8 (emphasis in original).

Next, the Court found that the **R & Q** certificate contained language nearly identical to that in **Munich**, by which the reinsurer agreed to indemnify the reinsured "against loss or damage … subject to the Reinsurance Accepted limits[.]" *Id.* at *9 (emphasis removed). The **R & Q** Court noted that, as in **Munich**, this language "reasonably implied that expenses are not subject to those limits." *Id.*

Lastly, the Court emphasized the following certificate language, applicable when the reinsured settles an underlying claim: "[S]hould the [reinsured's] policy limit include expenses, the Reinsurer's maximum limit of liability shall be stated in Item 4, of the Declaration [i.e., $1 million]." *Id.* (citation omitted). The **R & Q** Court commented: "[T]he fact that the Certificate states one particular instance in which [the reinsurer's] liability

limit includes expenses implies that its liability limit does not include expenses in other instances." *Id.* Accordingly, the Court found the contract language ambiguous with regard to whether expenses were capped by the liability limits. *Id.* at *10.

With this background in mind, we consider the trial court's ruling in the present case. In comparing the language of the facultative certificates at issue herein with that in *Bellefonte*, the trial court determined that "while similar" the language of the present certificates contain "slight variations which lead[] to a different conclusion." Trial Court Opinion, 3/27/2015 (OneBeacon's Motion), at 5. The trial court emphasized that in *Munich*, the Second Circuit "clarified that *Bellefonte* did not establish a blanket rule that all limits of liability are presumptively expense-inclusive," and that each certificate must be analyzed "as a whole to discern its meaning[.]" *Id.*

With respect to the certificate language, the trial court opined:

First, the language on the front side of the certificates states the premium is "subject to the general conditions set forth on the reverse side hereof …." General Condition 1 reinforces this premise as it states that "[t]he liability … shall be subject … to all the terms and conditions of the Company's policy." The difference between this language and that of *Bellefonte* cannot be ignored. **Instead of the terms and conditions being subject to the liability as in *Bellefonte*, the liability is subject to the terms and conditions.** This places greater emphasis on the conditions themselves, which may trump other aspects of the certificates. **As a result, a condition that excludes expenses in calculating the total loss limit holds more weight than the amount of "Reinsurance Accepted" when interpreting these certificates.**

*Bellefonte* highlighted the importance of the "subject to" clause, and [*Munich*] demonstrated the ability of a court to

- 23 -

> reach a different interpretation. If anything, the terms of the certificates may have created a presumption of expense-*exclusiveness*. Having scrutinized the precise terms on their own, and the viewing the certificate as a whole, this court finds that [OneBeacon] is not entitled to summary judgment on this issue.

*Id.* at 5-6 (some emphasis in original; some emphasis added).

OneBeacon argues, however, that the language of the facultative certificates unambiguously limits its liability, for both losses and expenses, to the "Reinsurance Accepted" amount in Section IV. OneBeacon's Brief at 17-18.

First, it contends the "Reinsurance Accepted" section does not distinguish between losses and expenses; therefore, it caps both. *Id.* at 23. Second, OneBeacon claims that while General Condition (3) lists the two components of the reinsurance – losses and expenses – it does not "in any way differentiate between 'loss' and 'expenses' with respect to application of the Reinsurance Accepted amount." *Id.* at 21. Third, OneBeacon emphasizes the language in General Condition (1) – the "following form" clause – which provides "the **liability** of [OneBeacon] **specified in Section IV** shall follow that of [Century/PEIC.]" *Id.* at 23, *quoting* Certificate at 2, General Condition (1). Because the Condition does **not** state "the liability … specified in Section IV" applies **only to losses**, OneBeacon maintains it must apply to expenses as well. *Id.* at 24. Moreover, while General Condition (1) further states the reinsurance is "subject in all respects" to the underlying policy's terms - which supports concurrency between the reinsurance and the underlying policy – OneBeacon stresses that the

language is precipitated by the clause "expect as otherwise specifically provided herein[.]" Certificate at 2. OneBeacon argues "because the 'Reinsurance Accepted' amount is 'specifically provided' in Section IV … [it] constitutes an exception to the general condition that the certificate is subject to the terms and conditions of the [underlying] policy."[18] OneBeacon's Brief at 24.

---

[18] We note OneBeacon also repeatedly challenges the trial court's "misquotation" of the certificate language. OneBeacon's Brief at 18-19, 22-23. Specifically, it points to Finding of Fact # 27 in the court's **post-trial** findings of fact and conclusions of law, where the trial court states the following:

> 27. Section 1 of each certificate - which states that the "liability of the reinsurer shall be subject to the terms and conditions of the condition's policy"-provides that "liability of the reinsurer shall follow that of the ceding company" and that Section 3 provides that the "expenses will be paid in addition to limits." [See N.T. 1/11/16 PM pp. 45-46].

Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶ 27. OneBeacon claims the trial court "alters and omits crucial language in the actual text" of General Condition (1), and incorrectly quotes the language in General Condition (3), which states "expenses will be paid in addition to **loss**," not limits. OneBeacon's Brief at 22-23 (emphasis in original). However, we find this argument is a red herring. Finding of Fact 27 appears under the heading "Industry Custom and Usage." Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶ 27. The trial court was quoting the testimony of Century/PEIC's reinsurance industry expert, Robert Hall, regarding his interpretation of the certificate language, not the actual language itself. **See** Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶ 27. Our analysis, for purposes of reviewing the summary judgment ruling, is limited to the certificate language.

Furthermore, OneBeacon argues "a consistent line of case law," led by *Bellefonte*, supports its interpretation of the facultative certificates. OneBeacon's Brief at 27. It maintains:

> [S]tate and federal courts around the country have followed *Bellefonte* on multiple occasions in interpreting facultative certificates under Pennsylvania, New York, or Illinois law, and holding that the "Reinsurance Accepted" amount stated in a facultative certificate unambiguously sets forth the full extent of the reinsurer's liability.

*Id.* at 30. OneBeacon insists "[t]here is no material difference" between the relevant language at issue herein and that in *Bellefonte*. *Id.* at 29. In addition, it emphasizes that the certificates in *Excess*, *Clearwater*, and *Continental Casualty* did not contain the "subject to" clause, which the trial court found to be lacking herein. *Id.* at 35. Moreover, OneBeacon argues *Munich* and *R & Q* are distinguishable since those certificates explicitly stated that the "reinsurer's obligation to pay 'losses or damages' was subject to the 'Reinsurance Accepted' amount, but did not provide that the obligation to pay expenses was subject to that restriction." *Id.* at 36 (emphasis omitted).

Conversely, Century/PEIC maintain the certificate language is ambiguous, particularly in light of the presumption of concurrency in the reinsurance industry. *See* Century/PEIC's Brief at 21. They explain this presumption is necessary so that the "reinsurer, which typically agrees to accept a portion of the policy risk in exchange for the same portion of the policy premium, is actually taking on risk proportional to its premium share."

*Id.* at 22 (emphasis omitted). Therefore, the "following form" language in General Condition (1) ensures that where the underlying policy covers defenses expenses above the liability limits, so does the reinsurance policy. *See id.* at 23-24. Furthermore, Century/PEIC maintain *Bellefonte* and its progeny are distinguishable based on their facts.

Considering the certificates herein, we agree General Conditions (1) and (3) contain language almost identical to that in *Bellefonte*. However, as the trial court points out, the "subject to" clause in the present case is materially different.

In *Bellefonte* and its progeny, the "subject to" clause stated the reinsurance was "subject to the terms, conditions and **amount of liability** set forth herein." *Bellefonte*, *supra*, 903 F.2d at 911 (emphasis added).[19] In the present case, however, the "subject to" clause states the reinsurance is "subject to the **general conditions** set forth on the reverse side." Certificate at 1 (emphasis added). It does not expressly provide that all of the coverage is subject to the "Reinsurance Accepted" limit.[20]

_____

[19] *See also Unigard*, *supra*, 4 F.3d at 1071 ("subject to the terms, conditions, limits of liability and Certificate provisions set forth herein.") (emphasis and citation omitted); *PRC*, *supra*, 1995 WL 217631 at *1 ("subject to the terms, conditions and amount of liability set forth herein") (emphasis and citation omitted); *Global/PEIC I*, *supra*, 2010 WL 1659760, at *1 ("subject to the terms, conditions and limits of liability set forth herein") (citation omitted and emphasis in original).

[20] Nor, however, does the certificate language herein imply that only "losses or damages" are subject to the "Reinsurance Accepted" amount as in
*(Footnote Continued Next Page)*

Furthermore, Century/PEIC's "underlying policies provide coverage for expenses in addition to the limits."  Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶ 29, *citing* N.T., 1/11/2016 (afternoon session), at 43-44.  Therefore, because the reinsurance certificate "follows" that of the underlying policy, it would cover expenses above the liability limit.  This is factually different from the situation in ***Bellefonte***, where the

*(Footnote Continued)* ────────────

***Munich*** and ***R & Q***.  The language of the certificates at issue does not explicitly include or implicitly exclude defense expenses from the "Reinsurance Accepted" cap.

We note OneBeacon argues the "subject to" clause distinction is irrelevant because, while the certificates do not expressly state expenses are subject to the "Reinsurance Accepted" amount, they also do not expressly state losses are subject to that limit either.  Accordingly, OneBeacon argues under Century/PEIC's reasoning, there would be "no cap whatsoever on either component of reinsurer liability[.]"  OneBeacon's Brief at 22 n.11.  We disagree with this characterization.  Clearly, the "Reinsurance Accepted" amount limits OneBeacon's liability to pay for losses.  Nonetheless, it is the language advocating concurrency (and the fact the underlying policy exclude expenses from their limits), and the acknowledgment that expenses will be paid "in addition to" losses, which muddles the meaning of the certificate as a whole.

Furthermore, OneBeacon asserts Century/PEIC's own expert, Robert Hall, conceded at trial that the "inclusion or absence of the 'subject to' the 'amount of liability' language found in ***Bellefonte*** is irrelevant" and his interpretation of the certificates would be the same even if they included the ***Bellefonte*** "subject to" clause.  ***See*** OneBeacon's Brief at 35.  However, OneBeacon is comparing apples to oranges.  Hall's testimony concerned his opinion regarding the custom and usage of reinsurance contracts in the early 1980's.  ***See*** N.T., 1/11/2016 PM, at 74-75 (Hall explaining, "I'm not here to testify about my legal opinion.  I'm here to testify about the understanding of the industry at the time.").  The relevancy of the "subject to" clause in ***Bellefonte***, however, depends upon our interpretation of a legal decision.

defense costs were paid as part of the reinsured's settlement agreement with the underlying insured – an agreement to which the reinsurer was not a party. Accordingly, absent language providing the entire certificate is "subject to" the "Reinsurance Accepted" amount, a reasonable interpretation of the language is that where the underlying policy covers expenses in addition to liability limits, the reinsurance certificate provides the same coverage.[21]

Nor do we find the language in General Condition (1) compels a different result. OneBeacon emphasizes that General Condition (1) states its

---

[21] We note the **PRC** Court found the fact that expenses were not included in the underlying policy in **Bellefonte** insignificant, stating: "The **Bellefonte** decision did not depend on whether or not the underlying policy included costs in the limit of liability, i.e., was cost-inclusive." **PRC**, **supra**, 1995 WL 217631, at *3. However, it merits emphasis that the decision in **PRC** also did not turn on this fact. Rather, the **PRC** Court concluded that Aetna, who was the reinsured in both **Bellefonte** and **PRC**, was "estopped" by the holding in **Bellefonte**. **Id.** at *4.

Moreover, the District Court for the Southern District of New York rejected a similar claim in **Global Reinsurance Corp. of American v. Century Indemnity Co.** ("**Global/Century I**"), 2014 WL 4054260, *5 (S.D.N.Y. 2014), citing **Unigard** as support. However, as we will discuss **infra**, on appeal, the Second Circuit questioned the legitimacy of the **Global/Century I** decision, before ultimately certifying that exact question to the New York Court of Appeals. **See id.** at 128 (certifying question to New York Court of Appeals to decide if the decision in **Excess**, **supra**, "impose[d] either a rule of construction, or a strong presumption, that a per occurrence liability cap in a reinsurance contract limits the total reinsurance available under the contract to the amount of the cap regardless of whether the underlying policy is understood to cover expenses[.]"). Therefore, the case law that undermines the significance of the coverage in the underlying policies is far from settled.

liability as "specified in Section IV" follows that of the reinsured, and notes the terms and conditions of the certificate follow that of the underlying policy "except as otherwise specifically provided herein." Certificate at 2. It asserts that because the language does not specify the amount applies only to losses, its "liability" specified in Section IV must include expenses as well. *See* OneBeacon's Brief at 24. Further, OneBeacon argues that because the "Reinsurance Accepted" limit is "specifically provided [therein]," the certificate coverage follows the terms and conditions of the underlying policy only to the extent of the "Reinsurance Accepted" amount. *Id.*

However, viewing the certificate as a whole, we do not find the language unambiguously limits OneBeacon's entire liability for losses **and** expenses to the "Reinsurance Accepted" amount. A reasonable interpretation of the certificate's reference to OneBeacon's "liability … specified in Section IV" is that it refers only to liability for losses. This is particularly true in light of General Condition (3), which requires the reinsurer to pay its proportion of losses, "and in addition thereto" its proportion of expenses. Certificate at 2. Similarly, the "except as otherwise provided herein" language is also ambiguous because the certificate does not explicitly state that expenses are included in (or "subject to") the "Reinsurance Accepted" limit. Pursuant to this reasoning, if the certificate follows the underlying policy, expenses must be reimbursed in addition to the policy limits. Accordingly, because we agree with the conclusion of the trial court that the certificate language is ambiguous as to whether defense

expenses are limited by the "Reinsurance Accepted" amount, the court properly denied OneBeacon's motion for summary judgment, and OneBeacon is entitled to no relief on its first claim.

Next, OneBeacon argues the trial court "compounded" its pretrial ruling - finding the language of the facultative certificates was ambiguous and permitting Century/PEIC to present extrinsic evidence - by relying on testimony that was "inadmissible and does not support the trial court's interpretation of the certificates."[22] OneBeacon's Brief at 38 (footnote omitted). Specifically, OneBeacon asserts the trial court cited no evidence in support of its factual finding that OneBeacon's share of the premium corresponded with the share of the risk it undertook. **See id.** at 30, *citing* Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶ 24. Moreover, OneBeacon contends the testimony of Century/PEIC's underwriters, Ronald Moreland and William Greene, was "unpersuasive" for the following reasons:

> (i) neither has any independent recollection of the placement of the reinsurance certificates at issue; and (ii) neither communicated to OneBeacon's predecessor [Century/PEIC's] purported intent that expenses would be covered in excess of "Reinsurance Accepted" amounts (and there is no other evidence demonstrating that OneBeacon's predecessor knew, or had reason to know of [this] purported intent).

_____

[22] We note that OneBeacon couples these two objections together and fails to differentiate how the testimony was inadmissible, as opposed to unpersuasive.

OneBeacon's Brief at 39 (record and case citation omitted). Further, OneBeacon claims the testimony of Century/PEIC's expert witness, Robert Hall, was inadmissible because Hall offered only his own interpretation of the certificate language, and did not establish that any of the words used in the certificate had a "specialized meaning in the reinsurance industry." OneBeacon's Brief at 41.

When considering a trial court's verdict in a non-jury trial, we must bear in mind the following:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. ***Allegheny County Housing Authority v. Johnson***, 908 A.2d 336, 340 (Pa.Super.2006). Our scope of review regarding questions of law is plenary. ***Id.***

***Skiff re Bus., Inc. v. Buckingham Ridgeview, LP***, 991 A.2d 956, 962 (Pa. Super. 2010). Moreover, "[t]he [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." ***Infante v. Bank of Am., N.A.***, 130 A.3d 773, 776 (Pa. Super. 2015) (quotation omitted), *appeal denied*, 138 A.3d 5 (Pa. 2016).

Here, our review of the record reveals ample support for the trial court's factual findings. Although, as OneBeacon contends, the court did not provide a record citation to support Finding of Fact #24 - pertaining to proportionality between the share of the premium and the corresponding share of the risk - Century's underwriter, Ronald Moreland, testified that "one of the cardinal rules of reinsurance was that everybody be treated equally with regard to risk and the premiums payable on that … if one company was taking one-fifth of the risk, they got one-fifth of the premium."[23] N.T., 11/11/2016 AM, at 101. **See also** N.T., 1/11/2016 PM, at 48-49 (Hall reviewing Exhibit P-13, Century's Memorandum of Reinsurance, showing reinsurer received same percentage of the premium

_____

[23] Moreland later explained, however, that the proportion of the premium was not paid in the exact same percentage as the risk. **See** N.T., 1/11/2016, at 15-16. For example, OneBeacon's predecessor did not receive 12% of the premium although it insured 12% of the risk, which would have been $3 million of $25 million. **Id.** at 15. Rather, Moreland testified the risk was layered with $5 million in the bottom layer, another $5 million in the middle layer, and $15 million in the top layer. **Id.** He further explained:

> And a premium was determined for each of those three layers based upon the risk. Usually the bottom – we call it the bottom layer, the first 5 million, which has the most potential for risk, would get a larger premium, certainly larger than the second 5 million, and then the 15 would get even a smaller premium[.]

**Id.** at 16.

as the percentage of the risk it assumed; "If you do the math, … 80 percent of the risk, 80 percent of the premium went to the reinsurers.").[24]

Furthermore, with regard to OneBeacon's objection to the testimony of Century/PEIC's underwriters, Moreland and Greene, we note both testified that at the time the facultative certificates herein were issued, it was their intention, and, indeed, a requirement of their employer, that the reinsurance provide concurrent coverage with the underlying policies. ***See*** N.T., 1/11/2016 AM, at 85-86 (Moreland, the underwriter for Century's predecessor, testifying that all reinsurance certificates were reviewed by

_____

[24] In its Reply Brief, OneBeacon emphasizes that, in addition to their proportionate share of the commission, Century/PEIC retained a ceding commission of up to 32.5% of the gross premium. OneBeacon's Reply Brief at 20-21. Because this ceding commission "could or did include 'income' or a 'fee'" for Century/PEIC, OneBeacon argues "the economics of the transactions contradict [Century/PEIC's] contention that the certificates should be construed to hold OneBeacon liable for a proportionate share of [their] expenses irrespective of the 'Reinsurance Accepted' caps." ***Id.*** at 22 (emphasis removed).

Both Moreland and Greene testified Century/PEIC took a ceding commission which covered administrative expenses and overhead. Moreland explained Century's ceding commission of 27.5% included 15% for the insurance broker who brought the underlying insured to Century, and the remaining was for "premium taxes" and "overhead." N.T., 1/11/2016 PM, at 22. Greene testified PEIC retained a 7.5% override of the ceding commission that was used to pay "administrative expenses, paid their board, their taxes, and I'm sure there was income for – a fee from the use of the paper." Deposition of William H. Greene, 12/3/2014, at 92. Indeed, Century/PEIC handled all of the paperwork for the claims, and brought the business to the reinsurers. Moreover, there was no testimony this ceding commission was contemplated to cover defense expenses.

underwriters to ensure concurrency with the underlying policy; "the important thing was to make sure that if [a policy] was reinsured, it was a hundred percent reinsured"); Deposition of William H. Greene, 12/3/2014, at 122-123 (Greene, PEIC's underwriter, explaining "it was paramount that the reinsurance which was purchased was concurrent with the policy," and that his "job security depended upon [it]"). To the extent OneBeacon argues this testimony was inadmissible because neither Moreland nor Greene had an independent recollection of the certificates at issue, we agree with Century/PEIC that this criticism relates to the credibility, not the admissibility, of the underwriters' testimony. Here, the trial court, sitting as fact-finder, concluded their testimony was credible, and we find no basis to disturb the court's determination. **See Infante, supra**.

We also reject OneBeacon's contention that the testimony of Moreland and Green was "not only inadmissible but unpersuasive" because neither communicated to OneBeacon their subjective intent that the "Reinsurance Accepted" amount was expense-exclusive. **See** OneBeacon's Brief at 39. In support of this claim, OneBeacon focuses on to the following language in a 40-year-old decision of this Court: "Also, a statement by one of the parties as to his understanding of ambiguous terms, even if made when the policy was being negotiated, is not material unless it was communicated to the other party." **Celley v. Mut. Benefit Health & Acc. Ass'n**, 324 A.2d 430, 435 (Pa. Super. 1974). However, we find the factual posture of **Celley** distinguishable from the present matter.

In **Celley**, the testimony at issue was being offered to explain the insured's understanding of the term "eye trouble" in an elimination endorsement of a medical insurance policy. *Id.* at 432. The insured and his agent believed the term excluded only medical issues involving the insured's right eye, because he had surgery on his right eye in the past. *Id.* at 433. However, the insurance company interpreted the endorsement to exclude coverage on both eyes. *Id.* Significantly, the insured also signed a document acknowledging the insurance company was not bound by any statements made by or to an agent. *Id.* At trial, the court declined to permit the insurance agent to testify regarding his conversations with the insured, and their mutual understanding regarding the policy exclusion. *Id.* In that context, it was evident neither the insurance agent nor the insured communicated their mutual understanding regarding the exclusion to the insurance company. Here, however, Moreland and Greene's testimony regarding their intent in obtaining reinsurance coverage did not concern their "subjective" intent of otherwise unambiguous terms; rather, their testimony reflected the industry's custom at that time. Accordingly, we find no abuse of discretion of the part of the trial court in permitting and considering their testimony.

With regard to the testimony of Century/PEIC's expert, Robert Hall, we reiterate: "[t]he admission of expert testimony is a matter of discretion [for] the trial court and will not be remanded, overruled or disturbed unless

there was a clear abuse of discretion." ***Portside Inv'rs, L.P. v. N. Ins. Co. of N.Y.***, 41 A.3d 1, 12 (Pa. Super. 2011) (quotation omitted).

OneBeacon contends the court erred in admitting Hall's testimony because he "simply offered his own inadmissible interpretation of the certificates." OneBeacon's Brief at 41. Again, we disagree. Hall offered expert testimony on custom and usage regarding the language in facultative certificates issued during the early 1980's. **See** N.T., 1/11/2016 PM, at 39-40. The Pennsylvania Supreme Court has held custom and usage testimony may be relevant in contract disputes:

> Where terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense, evidence to that effect is admissible for the purpose of applying the instrument to its proper subject matter.

***Resolution Trust Corp. v. Urban Redevelopment Auth. of Pittsburgh***, 638 A.2d 972, 975 (Pa. 1994). **See id.** at 973 (finding that trial court erred in granting partial summary judgment because "mortgage guaranty insurance company, in the absence of a policy provision, may show through custom in the trade that the mortgagee financial institution is responsible for the misrepresentations of a mortgagor[.]").

Accordingly, we find no abuse of discretion on the part of the trial court in permitting Hall to testify "on custom and usage in the facultative

reinsurance industry,"[25] particularly since OneBeacon presented its own expert, Jack Koepke, who disputed Hall's findings. Here, Hall opined:

> My conclusion was that it was the understanding of the industry at the time that the reinsurance accepted portion of these facultative certificates was not a cap on liability and expenses. It was only a cap on indemnity.

N.T., 1/11/2016 PM, at 40. Conversely, Koepke testified that, based on his experience, he did not "think there was an understanding of that nature in the industry at that time." N.T., 1/12/2016, at 28. Rather, Koepke stated, "The underwriting intent is expressed in the contract as written, and the way it is written, there is no intent to cover expenses in addition to limits." *Id.* at 29-30. The trial court, sitting as fact finder, reconciled these differing opinions in favor of Century/PEIC.[26] *See Infante, supra*. No relief is warranted.

Next, OneBeacon argues the trial court erred in refusing to find as a matter of law that Century/PEIC were collaterally estopped from "asserting that any certificate at issue obligates OneBeacon to pay expenses in excess

---

[25] Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶ 25.

[26] We note the trial court did not explicitly state Hall's expert testimony was more credible than Koepke's expert testimony. *See* Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶¶ 25-29. Rather, the court stated: "The evidence provided by the expert witnesses … while not dispositive, did provide some assistance in placing the certificate language in context with the policy provisions." *Id.* at ¶ 26. Nevertheless, one can infer from the court's analysis of the certificate language and citation to the record, that it relied upon Hall's interpretation. *See id.* at ¶¶ 27-29.

of its 'Reinsurance Accepted' amount." OneBeacon's Brief at 42. Specifically, OneBeacon maintains the court erred in denying its motion for summary judgment on this claim, and later, in refusing to address it following trial. *See id.* at 49-51.

Collateral estoppel bars the re-litigation of a previously decided issue in a later action. *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). Collateral estoppel applies only when **all** of the following elements are met:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Heldring v. Lundy Beldecos & Milby, P.C.*, 151 A.3d 634, 644 (Pa. Super. 2016) (citation omitted). Moreover, a federal court judgment is entitled to "due force and full effect in state courts." *Weissberger v. Myers*, 90 A.3d 730, 733 (Pa. Super. 2014) (quotation omitted).

Here, OneBeacon asserts the decisions of the federal district courts in *Global/Century I*, *supra*, and *Global/PEIC I*, *supra*, bar Century/PEIC's claim herein. In both cases, the court considered the same question raised here, that is, whether the reinsurer's obligation to pay defense expenses was capped by the "Reinsurance Accepted" amount listed on the parties' certificate. *See Global/Century I*, *supra*, 2014 WL 4054260, at *4;

*Global/PEIC I*, *supra,* 2010 WL 1659760, at *2. Furthermore, in both cases, the district court, citing *Bellefonte* and its progeny, found the language of the certificates limited the reinsurer's total liability, inclusive of expenses, to the "Reinsurance Accepted" amount. *See Global/Century I*, *supra*, 2014 WL 4054260, at *5 (referring to "subject to" clause and stating, "[h]ere the relevant language in Global's Certificates is nearly identical to the language relied on by the Second Circuit in *Bellefonte*."); *Global/PEIC I*, *supra,* 2010 WL 1659760, at *5 (noting preamble in certificate "makes clear that Global's reinsurance obligations," including payment of expenses are "'subject to the … limits of liability' contained in the Declarations[;]" finding *Bellefonte* "well-reasoned, persuasive authority") (emphasis removed). Because the identical argument is presented in this case, and Century/PEIC were both parties in the former cases and had "a full and fair opportunity" to litigate this issue, OneBeacon maintains they are bound by district court rulings in the *Global* decisions. OneBeacon's Brief at 43, 46, 48.

In denying OneBeacon's motion for summary judgment, the trial court stated:

> [OneBeacon] also moves for summary judgment on the grounds that [Century/PEIC] are collaterally stopped from arguing their case due to the holdings in [*Global/PEIC I*], and [*Global/Century I*]. However, these cases do not hold the necessary weight of final judgments at this juncture in order to apply collateral estoppel against [Century/PEIC].[3] Also, this court shall not apply collateral estoppel on the basis that the slightly different wording of the "subject to" clause may prove to be an influential factor in the interpretation of the certificate.

_____

> [3] In **PEIC v. Global**, due to its finding on another issue, the Third Circuit chose not to consider the "limit-of-liablity" issue and dismissed it as moot. **PEIC**, 693 F.3d at 425 n.3. The court in **Global v. Century** referred the matter to a Magistrate judge so the parties could negotiate the terms of a final order. **Global**, 2014 WL 4054260; **see also** [OneBeacon's] Motion for Summary Judgment, at 27. Since the finding remains subject to a motion for reconsideration and has not been appealed, it does not qualify as a final judgment.

Trial Court Opinion, 3/27/2015 (OneBeacon's Motion), at 7-8.

We find no error or abuse of discretion in the ruling of the trial court. **See Pappas**, **supra**. Although the issue in **Global/Century I** and **Global/PEIC I** was identical to the issue in the present case, OneBeacon glosses over the fact that the language in the reinsurance certificates under review is different. Indeed, OneBeacon maintains "[t]he facultative certificates at issue in the **Global** cases are identical in all relevant respects to the certificate at issue in this case." OneBeacon's Brief at 43. We disagree. As explained **supra**, the "subject to" clause in the present case is materially different from that in **Bellefonte**, and those in the **Global** decisions. Here, as noted above, the "subject to" clause states the reinsurance is "subject to the **general conditions** set forth on the reverse side,"[27] rather than "subject to the terms, conditions and **amount [or limits] of liability** set forth herein[,]" as the certificates in **Bellefonte** and

_____

[27] Certificate at 1 (emphasis added).

the **Global** cases.[28]    Therefore, OneBeacon's certificate does not expressly provide that all of the coverage (including expenses) is subject to the "Reinsurance Accepted" limit.   Consequently, we conclude the materially different language in the certificates herein precludes the operation of collateral estoppel.  **See** Restatement (Second) of Judgments § 27 (1982), Comment (c) ("Preclusion ordinarily is proper if the question is one of the legal effect of a document **identical in all relevant respects** to another document whose effect was adjudicated in a prior action.") (emphasis added).

Furthermore, we also agree with the trial court's determination that the **Global** decisions do not constitute final judgments for purposes of collateral estoppel.   With regard to **Global/PEIC I**, after granting the reinsurer's (Global's) motion for judgment on the pleadings on the expense issue, the district court later denied Global's motion for summary judgment on its claim that the PEIC had breached another part of the contract, which relieved Global of its obligation to provide coverage.   **See Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am.** ("**Global/PEIC II**"), 693 F.3d 417, 425 (3d Cir. 2012).   Following this ruling, the parties stipulated to the entry of a final judgment, with Global's coverage, including

---

[28] **Bellefonte**, **supra**, 903 F.2d at 911 (emphasis added); **Global/Century I**, **supra**, 2014 WL 4054260, at *5; **Global/PEIC I**, **supra,** 2010 WL 1659760, at *4.

defense costs, capped by the "Reinsured Accepted" amount on the certificate. Both parties appealed, and PEIC specifically challenged the court's earlier ruling that Global's obligation to pay expenses was capped by the liability limit. *See id.*

On appeal, the Third Circuit found the district court's summary judgment ruling was erroneous, and that PEIC's failure to comply with a condition precedent excused Global's obligation to provide **any coverage** under the certificate. *See id.* at 439-440. Therefore, the Third Circuit "reverse[d] the District Court's Final Order and Judgment, and remand[ed] with instructions that the Court enter a judgment of non-liability in Global's favor." *Id.* at 440. The Third Circuit also explained that as a result of its ruling, PEIC's expense cap issue was moot:

> Because Global is entitled to a judgment of non-liability as a result of our holding, PEIC's limit-of-liability appeal is moot. Thus we have no occasion to consider the Second Circuit's decision in *Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 903 F.2d 910 (2d Cir.1990), which PEIC asserts is much maligned in the reinsurance industry.

*Id.* at 425 n.3.

With regard to *Global/Century I*, following the district court's ruling granting Global's motion for summary judgment on the expense cap issue, Century appealed the decision to the Second Circuit Court of Appeals. *See Global Reinsurance Corp. of Am. v. Century Indemnity Co.*, 843 F.3d 120 (2d. Cir. 2016) ("*Global/Century II*"). Significantly, the Second Circuit questioned the viability of its prior ruling in *Bellefonte*, stating:

[W]e find it difficult to understand the ***Bellefonte*** court's conclusion that the reinsurance certificate in that case unambiguously capped the reinsurer's liability for both loss and expenses. Looking only to the language of the certificate, we think it is not entirely clear what exactly the "Reinsurance Accepted" provision in ***Bellefonte*** meant. Evidence of industry custom and practice might have shed light on this question, but the ***Bellefonte*** court did not consider any such evidence in its decision, although it is unclear if any was presented.

The purpose of reinsurance is to enable the reinsured to "spread its risk of loss among one or more reinsurers." If the amount stated in the "Reinsurance Accepted" provision is an absolute cap on the reinsurer's liability for both loss and expense, then Century's payments of defense costs could be entirely unreinsured. This seems to be in tension with the purpose of reinsurance. … Interpreting the "Reinsurance Accepted" provision as a cap for both losses and expenses, as we did in ***Bellefonte***, could permit Global to receive 50% of the premium while taking on less than 50% of the risk.

***Id.*** at 126 (emphasis in original and citation omitted). However, while the Court found "these arguments worthy of reflection[,]" it was also concerned with "the principle of *stare decisis*" and overruling prior precedent. ***Id.***

Therefore, recognizing "[t]he interpretation of the certificates at issue here is a question of New York Law[,]" the Second Circuit sought guidance from the New York Court of Appeals as to "whether a consistent rule of construction specifically applicable to reinsurance contracts exists[.]" ***Id.*** at 127. The Court acknowledged the holding in ***Excess***, ***supra***, which Global argued was controlling, but found the facts of that case were distinguishable. Namely, in ***Excess***: (1) the parties agreed the policy contained a per occurrence "liability cap;" (2) the cap provision was labeled "Limit" rather than "Reinsurance Accepted;" and (3) the reinsured sought coverage for loss

adjustment expenses, rather than general defense expenses. **Id.**

Therefore, the Second Circuit certified the following question to the New

York Court of Appeals:

> Does the decision of the New York Court of Appeals in **Excess** [**supra,**] impose either a rule of construction, or a strong presumption, that a per occurrence liability cap in a reinsurance contract limits the total reinsurance available under the contract to the amount of the cap regardless of whether the underlying policy is understood to cover expenses such as, for instance, defense costs?

**Id.** at 128.

Consequently, neither the ruling in **Global/PEIC I** nor

**Global/Century I** constituted a final judgment for purposes of collateral

estoppel. The decision in **Global/PEIC I** was rendered moot after the Third

Circuit found Global had no duty at all to provide reinsurance coverage

based on PEIC's breach of the certificate terms, and explicitly reversed the

district court's order. Likewise, the ruling in **Global/Century I** is not a final

judgment because the Second Circuit has certified the question to the New

York Court of Appeals. Accordingly, OneBeacon's collateral estoppel claim is

without merit.[29]

_____

[29] Because we have found that the first two requirements for application of the doctrine of collateral estoppel – *i.e.*, identical issues and a final judgment – have not been met, we need not consider the remaining elements. **See Heldring**, **supra**, 151 A.3d at 644 ("For collateral estoppel to apply, all of these elements must be met.").

OneBeacon's fourth and final claim pertains to damages. Specifically, it asserts the trial court erred in (1) awarding damages to Century because its evidence did not support the award, and (2) granting Century/PEIC's motion for partial summary judgment on the issue of prejudgment interest. *See* OneBeacon's Brief at 51-58.

First, OneBeacon maintains that Century failed to prove its damages because "the amounts shown on [its] summary [trial] exhibit for periods prior to August 23, 2013 bear no relationship to the aggregate billings actually issued to OneBeacon." OneBeacon's Brief at 51. Preliminarily, we note that our review of the voluminous certified record in this case has failed to uncover the summary trial exhibit of which OneBeacon complains, P-180(b).[30] We remind OneBeacon that "[i]t is an appellant's duty to insure that the certified record contains all documents necessary for appellate review[,]" and when a necessary document is not included in the certified record, we may find the issue waived on appeal. *Love-Diggs v. Tirath,* 911 A.2d 539, 541 (Pa. Super. 2006). Nevertheless, we find our review is not hampered by the missing exhibit.

OneBeacon complains the billing information included on the summary trial exhibit "b[ore] no relationship to the aggregate billings actually issued to OneBeacon." OneBeacon's Brief at 51. Moreover, it argues Century's

_____

[30] We note that Century/PEIC moved Exhibit P-180(b) into evidence at the close of its case-in-chief. *See* N.T., 1/11/2016 PM, at 79.

Vice President, Head of Reinsurance, Christine Russell, "could not explain this discrepancy." *Id.* at 52. However, the record belies OneBeacon's claim.

Russell testified that Century changed its billing in August 2013. N.T., 1/11/2016 AM, at 58. Prior to that date, Century billed on a "combined product and non-product basis." *Id.* at 57. In August of 2013, Century began to separately bill for products only. *Id.* Russell explained the discrepancy between the earlier billings and the summary trial exhibit was due to this billing change:

> [T]o figure out when we changed the billing, to take out the non-products, you can't just take out the amount billed for non-products. You have to go back and reevaluate the loss from ground up. So the total dollars – if you're looking at the proof of loss, the total dollars in your top right box paid loss would be less, and you have to go back and recalculate the whole thing from [the] ground up. And so what this is showing is what the dollars would have been and how much would have hit of the bill at the point in time, based on a reevaluating of the whole loss from [the] ground up. There are fewer total dollars, so it's going to proceed up the layers slower than it would have before.

*Id.* at 63-64. Therefore, Century did provide an explanation for the discrepancy in the amounts due as reflected on the exhibit, compared with the actual billings.

Furthermore, in determining Century's damage award, the court considered all of the proofs of loss supplied by Century in support of the total amount due listed on the summary trial exhibit. *See* Trial Court's Findings of Fact and Conclusions of Law, 2/23/2016, at ¶¶ 32-34, *citing*

N.T., 1/11/2016 AM, Trial Exhibits P-178-A to P-178-L. Accordingly, we find Century met its burden of proving damages.

OneBeacon also claims the trial court erred when it granted partial summary judgment to both Century and PEIC on the issue of prejudgment interest. It contends Century is not entitled to interest on proofs of loss issued prior to August 23, 2013, because OneBeacon could not ascertain the correct amount due before that date as a result of Century's improper billings. *See id.* at 53-55. Moreover, with regard to PEIC, OneBeacon asserts PEIC failed to provide requested information regarding its billing until May 14, 2013. *See id.* at 56. Because it was contractually obligated to make the information available, OneBeacon contends PEIC is not entitled to interest accruing prior to July 13, 2013, in other words, 60 days after PEIC provided the requested information.[31] *See id.*

In *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253 (Pa. 2012), our Supreme Court explained how prejudgment interest is awarded in breach of contract cases:

> In *Fernandez*[ *v. Levin*, 548 A.2d 1191 (Pa. 1988)], this Court adopted Section 354 of the Restatement (Second) of Contracts

---

[31] As noted above, the certificates required OneBeacon to pay Century/PEIC "**promptly** following receipt of proof of loss." Certificate at 2, General Condition (4) (emphasis added). Although the certificates did not specify a particular time period that would satisfy the prompt payment requirement, both OneBeacon and Century/PEIC agree that payment within 60 days of proof of loss constitutes prompt payment. *See* OneBeacon's Brief at 54-55; Century/PEIC's Brief at 47.

as the law of this Commonwealth with respect to the recovery of interest as damages in breach of contract actions. Section 354, titled "Interest As Damages," provides:

(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Restatement (Second) of Contracts § 354. In adopting Section 354, we stated:

For over a century it has been the law of this Commonwealth that the right to interest upon money owing upon contract is a legal right. *West Republic Mining Co. v. Jones & Laughlins,* 108 Pa. 55 (1885). That right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment. *Palmgreen v. Palmer's Garage, Inc.,* 383 Pa. 105, 108, 117 A.2d 721, 722 (1955).

*Fernandez,* 519 Pa. at 379, 548 A.2d at 1193.

With regard to prejudgment interest, we have explained, "[i]nterest has been defined 'to be a compensation allowed to the creditor for delay of payment by the debtor,' and is said to be impliedly due 'whenever a liquidated sum of money is unjustly withheld.'" *School Dist. of City of Carbondale v. Fidelity & Deposit Co. of Maryland,* 346 Pa. 491, 492, 31 A.2d 279, 280 (1943) (citations omitted). However, "as prerequisites to running of prejudgment interest, the debt must have been liquidated with some degree of certainty and the duty to pay it must have become fixed." *Id.* at 493, 31 A.2d at 280; Restatement (Second) of Contracts § 354(1) ("If the breach consists of a failure to pay a definite sum of money or to render a performance with fixed or ascertainable monetary value, interest is recoverable.").

- 49 -

*Id.* at 263-264 (footnotes omitted). *See also Cresci Const. Servs., Inc. v. Martin*, 64 A.3d 254 (Pa. Super. 2013).

> In other words,
>
> prejudgment interest is a matter of right where the amount is ascertainable from the contract. Where the amount due and owing is not sufficiently definite, prejudgment interest is awardable at the discretion of the trial court.

*Ely v. Susquehanna Aquacultures, Inc.*, 130 A.3d 6, 15 (Pa. Super. 2015) (citation omitted), *appeal denied*, 136 A.3d 982 (Pa. 2016). "Our review of an award of pre-judgment interest is for abuse of discretion." *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa. Super. 1999).

With regard to Century's award of prejudgment interest, OneBeacon argues it "had no duty to pay any proofs of loss until after Century corrected its billings on August 23, 2013[.]" OneBeacon's Brief at 54. It claims Century was awarded interest on the $6 million dollar payment it made in 2013 based upon the summary exhibit that demonstrated the $6 million became due between 2011 and January of 2013. *Id.* at 53. However, OneBeacon maintains that the proofs of loss, which were issued prior to the corrected billing, included both product and non-product losses and it was "impossible for OneBeacon to ascertain the amount of 'products' losses and expenses that were actually due[.]" *Id.* It also claims that Century "conceded" this point, referring to the deposition testimony of

Century/PEIC's designated corporate representative, Stefanie Walterick.[32] *See id.*, *citing* Deposition of Stefanie Walterick, 11/19/2014, at 159-160. Moreover, OneBeacon asserts the "incoherent" explanation of how the amounts due were calculated on summary trial exhibit, which involved a "ground up analysis," provided by Century's Vice President, Head of Reinsurance, Russell, further supports its claim that it could not ascertain the proper amount of product losses and expenses due prior to August 2013. *Id.* at 54.

Preliminarily, we note that Century did **not** concede that it was impossible for OneBeacon to determine its proportionate share of product losses until Century changed its billing in August of 2013. While Walterick acknowledged that it was "impossible to break out" the products only billings if OneBeacon "just look[ed] at the proof[s of loss] in a vacuum and [] never look[ed] at anything else," she explained that the proofs of loss were accompanied by billing letters that provided the requisite detailed information. Deposition of Stefanie Walterick, 11/19/2014, at 159-160.

In granting Century's motion for partial summary judgment the trial court opined:

---

[32] Walterick testified that she is an assistant vice-president for the Brandywine Group of Insurance & Reinsurance Companies, which includes both Century and PEIC. *See* Deposition of Stefanie Walterick, 11/19/2014, at 18-19.

The parties have supported their arguments with a substantial amount of evidence, including the copies of the billings themselves and depositions of individuals involved with the claims. Based on the record, [OneBeacon] had sufficient information to calculate within a reasonable degree the amount owed under the Century certificates, and therefore is required to pay Century prejudgment interest for late payments under the certificates.

Trial Court Opinion, 3/27/2015 (Century/PEIC's Motion), at 5-6. We find no abuse of discretion on the part of the trial court. OneBeacon's argument consists of parsing out excerpts from the testimony of Century's witnesses in an attempt to demonstrate Century knew its billings were incomprehensible. The trial court, however, reviewed the actual proofs of loss and accompanying billing letters before concluding OneBeacon could ascertain "within a reasonable degree" the amount due under the facultative certificates. *Id.* *See* Affidavit of Stefanie Walterick, 1/20/2015, Exhibits B-F.[33] Accordingly, we find no abuse of discretion, and no relief is warranted. *See Ely*, *supra*, 130 A.3d at 15 ("Where the amount due and owing is not sufficiently definite, prejudgment interest is awardable at the discretion of the trial court.").

_____

[33] In particular, Exhibit F to Walterick's affidavit is a chart that calculates the interest due for all of the Century/PEIC billings. *See id.* at Exhibit F. The earlier interest for the Century (Formosa) billings began to run on November 27, 2011, 60 days after OneBeacon received the proofs of loss on September 28, 2011. *See id.* As for PEIC, the earliest interest began to run on July 22, 2012, 60 days after OneBeacon received the proofs of loss on May 23, 2012. *See id.* The trial court used these calculations for its pretrial award of pre-judgment interest. *See* Trial Court Opinion, 3/27/2015 (Century/PEIC's Motion), at 6.

As for the award of prejudgment interest to PEIC, OneBeacon argues it had no duty to pay until July 14, 2013, 60 days after PEIC provided OneBeacon with information it had requested to verify the amount it was being billed was correct. **See** OneBeacon's Brief at 55-56. OneBeacon further contends it made written requests for this information in June of 2012, and April of 2013, but PEIC did not provide the materials until May 14, 2013. The facultative certificates require the reinsured to "make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to [the] reinsurance or claims in connection therewith." Certificate at 2, General Condition (1). OneBeacon maintains PEIC "failed to fulfill this obligation, as it did not make the records available at OneBeacon's disposal until May 14, 2013," and, consequently, OneBeacon's duty to pay the proofs of loss was discharged until that time. OneBeacon's Brief at 57.

The trial court disposed of this claim as follows:

> Here, the fourth provision of the certificate simply provides that "[p]ayment … will be made by [OneBeacon] to [PEIC] promptly following receipt of proof of loss." No other conditions are attached. [OneBeacon's] obligation to make payment was triggered once it received proof of loss. While the parties are bound by all of the terms in the contract, the policy cannot be interpreted so that the fourth provision has no effect on the parties until, and only until, all of the other enumerated terms have first been satisfied. Moreover, the first provision of the certificates merely requires [PEIC] to "*make available for inspection* and place *at the disposal of* [OneBeacon] at reasonable times any of its records relating to this reinsurance or claims in connection therewith." (emphasis added). [OneBeacon's] request that PEIC mail OneBeacon specific

records relating to the proofs of loss, while seemingly reasonable, and perhaps commonplace, technically goes beyond what is required of [PEIC]. Since [PEIC] only had to "make available" the records at [OneBeacon's] "disposal," the onus was on [OneBeacon] to actively seek and collect the records, rather than passively wait for [PEIC] to satisfy its requests. In conclusion, [OneBeacon] was required to make payment promptly upon receiving proof of loss, and its failure to do so entitles [PEIC] to the resulting interest.

Trial Court Opinion, 3/27/2015 (Century/PEIC's Motion), at 4-5 (footnote omitted).

Again, we find no abuse of discretion on the part of the trial court. As PEIC points out in its brief, OneBeacon did not contend "that the PEIC proofs of loss left it **unable to calculate** how much it owed under the Gould certificates." Century/PEIC's Brief at 48 (emphasis supplied). Rather, OneBeacon sought additional information "to verify that it was being properly billed." OneBeacon's Brief at 11. Further, while OneBeacon emphasizes PEIC's corporate representative, Walterick, conceded that OneBeacon's request for information was not "unreasonable," it fails to acknowledge Walterick's additional testimony that she sent OneBeacon a response to its June 2012 request four months later. **See** Deposition of Stefanie Walterick, 11/19/2014, at 256-260. **See also id.** at 258 ("I think we provided a good response to [OneBeacon's] queries and provided a substantive and complete response.").

Here, the trial court concluded that General Condition (4) explicitly required OneBeacon to promptly pay PEIC following receipt of proofs of loss, and was not dependent upon PEIC's duty under General Condition (1) to

make records available for inspection. **See** Trial Court Opinion, 3/27/2015 (Century/PEIC's Motion), at 4-5. As a panel of this Court previously stated, even "[w]here the amount due and owing is not sufficiently definite, prejudgment interest is awardable at the discretion of the trial court." **Ely**, **supra**, 130 A.3d at 15. Accordingly, no relief is due on this claim.[34]

Because we find no error or abuse of the trial court, we affirm the judgment entered in favor of Century/PEIC and against OneBeacon.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2017

---

[34] We note OneBeacon requests that this Court take "judicial notice" of the pleadings in a federal district court case, filed in the District of Connecticut, in which Century, "PEIC's sister-company and co-plaintiff," purportedly took the position of OneBeacon herein, that is, Century (as a reinsurer) "refused to pay more than $6 million … due to [the reinsured's] failure to provide information requested by Century." OneBeacon's Brief at 57. However, we decline to take judicial notice of **pleadings** in an **unrelated** federal court case.