J-A04019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GOURMET'S DELIGHT MUSHROOMS, LP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL D. KEATING AND SUSAN S. KEATING, ET AL. | : | No. 1416 EDA 2021 |
| | : | |
| | : | |
| APPEAL OF: SEAN C. SMITH, MALLORY P. AUSTIN, SARAH BERDOULAY,  TROY ST. JOHN, ARTHUR TAYLOR, CYNTHIA TAYLOR, RICK MASHA,  TERESA MASHA, GARY M. MACK, BARBARA L. MACK, WILLIAM D. WALKER, MARGARET W. WALKER, JOSEPH S. COX, PATRICK G. TALWIN,  LINDA A. TIBERIA, ROBERT S. REYNOLDS, WENDY L. REYNOLDS,  LOUIS F. DONOGHUE, MARIANNE C. DONAGHUE, CHRISTOPHER M. WURM, VIRGINIA C. NORTH, JANET A. SMITH, MARY ANN HITCHENS,  ANTHONY L. LAURIA, LINDA S. LAURIA, DANNY MILANO, CARRIE MILANO AND LYNN ARRINGTON | : : : : : : : : : : : : : : : : : | |

Appeal from the Judgment Entered June 24, 2021
In the Court of Common Pleas of Chester County Civil Division at No(s):
2017-07576-RC

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 27, 2022**

Appellants, Sean C. Smith, Mallory P. Austin, Sarah Berdoulay,  Troy St.

John, Arthur Taylor, Cynthia Taylor, Rick Masha,  Teresa Masha, Gary M. Mack,

Barbara L. Mack, William D. Walker, Margaret W. Walker, Joseph S. Cox, Patrick G. Talwin, Linda A. Tiberia, Robert S. Reynolds, Wendy L. Reynolds, Louis F. Donoghue, Marianne C. Donaghue, Christopher M. Wurm, Virginia C. North, Janet A. Smith, Mary Ann Hitchens, Anthony L. Lauria, Linda S. Lauria, Danny Milano, Carrie Milano And Lynn Arrington (collectively, the Neighbors),[1] appeal from the judgment entered on June 24, 2021, in favor of Appellee Gourmet's Delight Mushrooms, LP (Gourmet).[2] On appeal, the Neighbors contend that the trial court erred by (1) failing to apply the law of the case doctrine; (2) concluding that the relevant deed restrictions were unambiguous; (3) finding that because the deed restrictions contained building restrictions, rather than use restrictions; and (4) concluding that the activities occurring on adjacent land were not relevant to the application of the deed restrictions. After review, we affirm the judgment entered in favor of Gourmet.

_____

[1] The trial court noted that default judgments were entered against Paul D. Keating, Susan S. Keating, Julie B. Engiles, Anne M. Jeavons, and Eric G. Jeavons. Trial Ct. Op., 3/18/21, at 1.

[2] On July 12, 2021, the Neighbors filed an appeal from the June 15, 2021 order denying their post-trial motions. However, we note that the appeal properly lies from the judgment entered following disposition of the post-trial motions. **See Mackall v. Fleegle**, 801 A.2d 577, 580 (Pa. Super. 2002) (explaining that an appeal does not properly lie from order denying post-trial motions, but rather from the judgment entered following disposition of post-trial motions). The record reveals that on June 24, 2021, Gourmet filed a praecipe for the entry of judgment following the disposition of the post-trial motions. Accordingly, the appeal lies from the judgment entered on June 24, 2021, and we have corrected the appeal paragraph accordingly.

The record reflects that on August 2, 2017, Gourmet filed a declaratory judgment action against the Neighbors seeking a declaration that certain deed restrictions concerning the term "mushroom house" did not apply to the Phase I composting facility approved for development on Gourmet's property. The parties each filed motions for summary judgment, and on October 26, 2018, the trial court granted summary judgment in favor of Gourmet and denied the Neighbors' motion for summary judgment.

The Neighbors filed a timely appeal, and on August 16, 2019, a panel of this Court held that there was an issue of material fact concerning the definition of "mushroom house" and whether the deed restrictions applied to Gourmet's proposed land development plan. *Gourmet's Delight Mushrooms, LP v. Keating*, 3413 EDA 2018, 2019 WL 3854930 (Pa. Super. filed August 16, 2019) (unpublished mem.) (*Gourmet I*). Therefore, the Court affirmed the trial court's order denying the Neighbors' motion for summary judgment, reversed the trial court's order granting Gourmet's motion for summary judgment, and remanded for further proceedings. *Id.*

On remand, the trial court permitted additional discovery and then conducted a two-day non-jury trial. Thereafter, the trial court made the following findings of fact:

> 1. Gourmet owns a property in London Grove Township ("London Grove Property"), on which Gourmet has operated a mushroom growing business since 1979.
>
> 2. This litigation concerns two properties Gourmet purchased in Franklin Township, which are contiguous to its London Grove Property.

- 3 -

3. In 1950, Lester and Janet Kirkman owned a single tract of land, consisting of over 120 acres, in Franklin Township ("Original Tract").

4. In 1951, the Kirkmans conveyed approximately 7.5 acres of the Original Tract to Jay and Margaret Irwin ("Irwin Property"), with the following deed restriction:

> ALSO UNDER AND SUBJECT to the provision that no mushroom houses shall be erected or maintained upon the above-described premises by said Grantees, their heirs, assigns or occupiers of said premises.

5. In 1955, the Kirkmans conveyed approximately 79.7 acres of the Original Tract to Fred and Agnes Shoun ("Shoun Tract"), with the following deed restriction:

> UNDER AND SUBJECT, also, to the restriction that no mushroom house shall be erected on the within conveyed premises for a period of ninety (90) years.

6. In 1972, a portion of the Shoun Tract was subdivided and developed into sixteen residential lots along a new cul-de-sac road, Queen Lane ("Queen Lane Subdivision").

7. The remaining Shoun Tract, a 24-acre parcel, was sold in 1980 to Leslie Benmark ("Benmark Property"). The Benmark Property remained undeveloped.

8. Gourmet's London Grove Property is adjacent to the Benmark Property.

9. In 2005, Gourmet purchased the 24-acre Benmark Property.

10. In 2014, Gourmet purchased the 7.5-acre Irwin Property.

11. Gourmet purchased the Benmark Property and the Irwin Property to expand its mushroom growing operation.

12. Gourmet subsequently merged the Franklin Township properties to form a 32.45-acre tract known as 420 Auburn Road, Franklin Township ("Consolidated Property").

13. The Neighbors are homeowners whose properties lie immediately to the southwest of the Consolidated Property, in the Queen Lane Subdivision.

14. Mushroom growing consists of six steps: 1.) Phase I composting, 2.) Phase II composting, 3.) Phase III spawning, 4.) Phase IV casing, 5.) Phase V pinning, and 6.) Phase VI cropping.

15. Phase I composting is an outdoor process that is designed to breakdown certain bulk ingredients. During this phase, bulk ingredients, such as horse and chicken manure, hay, and corncobs, are wet and then mixed by a compost turner.

16. Phase I composting is the most odiferous phase of mushroom growing.

17. Phase I composting can take place on a pad adjacent to a mushroom house, on an open-air wharf, or in a partially enclosed bunker.

18. Phase I composting cannot take place in a mushroom house.

19. Mushrooms cannot be grown in Phase I compost.

20. Phase II composting, known as pasteurization, is necessary to kill insect, pest fungi, and other pests that may be present in the compost. In this phase, the compost is conditioned to remove ammonia formed during Phase I composting[.] Phase II composting can only occur in environmentally controlled enclosed rooms.

21. In Phase III, spawn is mixed into the compost. Spawn act like seed.

22. In Phase IV, casing, which is a top dressing of peat moss, is applied to the spawn run compost.

23. In Phase V, pinning, mushrooms begin to develop.

24. Phase VI is the final growth stage and includes harvesting the mushrooms.

25. Gourmet's business includes Phase I composting. Gourmet began composting at the London Grove Property in 1987.

26. Gourmet's Phase I composting takes place outdoors on the London Grove Property on a flat pad as well as within a three-sided, open air shed.

27. Separate and apart from the composting facilities, there are mushroom houses and a packaging facility on the London Grove Property.

28. Sometime in 2005, when Gourmet was considering the purchase of the Benmark Property, representatives of Gourmet contacted property owners in the Queen Lane Subdivision to inquire whether they would agree to rescind the deed restrictions with respect to the prohibition against erecting mushroom houses.

29. At that time, Richard Pia, owner of Gourmet, signed an affidavit that was circulated among the Queen Lane Subdivision property owners representing that Gourmet was "not interested in using the Benmark property for Phase I Composting (also known as preparation of fresh mushroom substrate) or for the Composting of Unused Mushroom Substrate (also known as Spent Mushroom Composting)."

30. Mr. Pia's representation was conditioned on "the cooperative effort of all the residents of Queen Lane . . . in having the current deed restrictions against mushroom houses removed from the Benmark property . . . ."

31. Mr. Pia believed that the residents of Queen Lane found composting activities more objectionable than mushroom houses and he wished to develop the Benmark Property to grow mushrooms.

32. Not all of the residents of Queen Lane agreed to the removal of all of the deed restrictions. Therefore, no agreement was reached.

33. The representations made by Mr. Pia and others on behalf of Gourmet reflect a position taken in negotiations to modify the deed restrictions and are not a concession of the meaning of the deed restrictions.

34. At the time Gourmet purchased the Franklin Township properties, the zoning regulations in Franklin Township, applicable to the properties, prohibited both composting and mushroom growing.

35. In 2014, Gourmet challenged the validity of the zoning regulations under the Agricultural, Communities and Rural Environment Act, 3 Pa.C.S. §§ 311-318 ("ACRE").

36. Gourmet was successful in its ACRE challenge and as a result Franklin Township amended its zoning ordinance and [Subdivision and Land Development Ordinance (SALDO)] and approved Gourmet's final land development plan on December 21, 2016

permitting Gourmet to construct a composting facility on the Consolidated Property.

37. Gourmet's plans for the Consolidated Property have evolved over time, including during the pendency of this litigation. Gourmet bound itself at trial to its plans for a composting facility that will conduct only Phase I composting on either a concrete slab wharf or within a three-sided partially enclosed bunker with aerated floors.

38. Gourmet will not conduct Phases II-VI of mushroom growing, all of which take place inside mushroom houses, on the Consolidated Property.

39. All of Gourmet's mushroom houses will be located on the London Grove Property. Gourmet has approval from London Grove to expand its mushroom growing operations on the London Grove Property.

40. Gourmet will use the Phase I compost produced on the Consolidated Property principally for growing mushrooms at the London Grove Property; however, excess Phase I compost will be sold.

41. When considering the meaning of the term "mushroom house", we are concerned with the meaning assigned in or about 1951 - 1955 when the Kirkmans placed the restrictions on the deeds to their property.

42. The Kirkmans, as granters, are not available to testify and no evidence was brought forward to address what the Kirkmans meant by "mushroom house." We are left to discern the meaning of mushroom house generally in the community at the time the Kirkmans put the restrictive covenants on the deeds. The findings below are directed to that time, 1951 - 1955.

43. A mushroom house is a four-sided, roofed building where mushrooms are grown in a room controlled for light, heat and humidity.

44. The sole purpose of a mushroom house is to grow mushrooms.

45. A source of Phase I compost is necessary to grow mushrooms.

46. Phase I compost has no use other than as the first stage of the medium that will be used to grow mushrooms.

47. Phase I compost was produced by the mushroom farmer for personal use.

48. Synthetic composting, a type of Phase I composting, was introduced in the 1940's, which led to commercial composting. Synthetic compost is compost that primarily uses hay, takes longer to prepare, requires more space and equipment, and is more productive.

49. Commercial composters produce Phase I compost to be sold to farmers who were growing mushrooms.

50. Phase I composting was conducted not only as part of the process of mushroom growing, but also as an activity separate and apart from mushroom growing to create a product available for sale.

51. Phase I composting was conducted on concrete pads adjacent to mushroom houses, on ground or in bunkers not adjacent to but near mushroom houses, and on ground or in bunkers at a distance from mushroom houses.

52. When present, concrete pads adjacent to mushroom houses were used for filling, casing and emptying the mushroom houses, in addition to Phase I composting.

53. When present, bunkers consisted of concrete walls and a roof with an opening at the front, like a shed, to load and unload the bunker. Bunkers are only suitable for Phase I composting.

54. The objection to mushroom houses was the unattractive appearance of the building.

55. The objection to mushroom farming was the odiferous nature of Phase I composting, flies and run-off.

56. Mushroom growing was not a year-round activity because temperature and humidity could not be controlled in the summer months until the use of air conditioning became widespread. Without air conditioning, growing activities would cease in or about early June and resume with Phase I composting in or about early August. Phase I composting lasts for three to four weeks during every growing cycle.

57. The off-site impacts of commercial mushroom growing, including increased odor, flies and stormwater run-off, became more and more problematic as the intensity of mushroom farming

increased while at the same time residential development encroached agricultural areas, which resulted in the implementation of regulatory and zoning controls in the 1970's and 1980's.

58. The conditions of the 1970's and 1980's have no relevance to the meaning of restrictions placed on deeds in the early to mid 1950's.

Trial Court Op., 3/18/21, at 1-8 (some formatting altered and footnote omitted).

The trial court concluded that the language in the deed restrictions was not ambiguous. *Id.* at 19. Additionally, the trial court found that the deed restrictions were building restrictions, and not use restrictions, and that the building restrictions were limited to the erection and maintenance of a mushroom house. *Id.* at 20. The trial court further concluded that a Phase I composting facility is not a mushroom house, and that there was no restriction against the use, development, construction, or occupancy of a Phase I composting facility on the subject property. *Id.* at 21. Judgment was entered in favor of Gourmet and against the Neighbors.

The Neighbors filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing the Neighbors' claims.[3]

On appeal, the Neighbors raise the following issues:

---

[3] In its Rule 1925(a) opinion, the trial court incorporated by reference and relied upon the March 18, 2021 opinion and the trial court's July 14, 2021 order that disposed of the Neighbors' post-trial motions.

1. Whether the trial court erred by determining that the deed restrictions were unambiguous and limiting its analysis only to the language of the deed restrictions, when the Superior Court previously held as a matter of law that the deed restrictions were ambiguous and remanded the case for the trial court to resolve the ambiguity by considering the nature of the subject matter, the object of the parties and the surrounding circumstances?

2. Whether the trial court erred by determining that the deed restrictions were building restrictions and not use restrictions, thereby artificially excluding from the restrictions the adjoining composting wharf, which was essential to the operation of a mushroom house in the 1950s?

3. Whether the trial court erred by determining that activities occurring on adjacent land are irrelevant to the application of the deed restrictions, where Gourmet is proposing to use the deed restricted property and Gourmet's adjacent property as a single, fully integrated use for growing mushrooms?

The Neighbors' Brief at 3 (some formatting altered).

When reviewing a trial court's verdict in a non-jury trial, we bear in mind the following principles:

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

* * *

Moreover, the trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

- 10 -

***Century Indem. Co. v. OneBeacon Ins. Co.***, 173 A.3d 784, 802 (Pa. Super. 2017) (citations omitted and some formatting altered).

**Law of the Case**

As part of their first issue, the Neighbors assert that in ***Gourmet I***, a prior panel of this Court ruled that the term mushroom house was ambiguous as a matter of law. The Neighbors' Brief at 33. The Neighbors contend that the trial court "was bound by [the ***Gourmet I*** Court's] legal determination, and erroneously defied it by finding that the deed restrictions were unambiguous and failing to apply the appropriate legal evaluation and make factual findings." ***Id.*** at 33-34. The Neighbors argue that the term mushroom house is ambiguous as the law of the case from the ***Gourmet I*** decision, and the trial court was bound by that conclusion. ***Id.***

Gourmet contends that the ***Gourmet I*** Court did not make a binding determination that the term mushroom house was ambiguous or that the determination was the law of the case. Gourmet's Brief at 22-23. Gourmet asserts that although this Court recognized that the term mushroom house may possibly have both a literal and figurative meaning, there was never a dispute regarding the literal meaning of mushroom house. ***Id.*** (citing ***Gourmet I***). Instead, Gourmet contends that this Court remanded the matter to the trial court only for the purpose of providing the Neighbors with an opportunity to establish that mushroom house had become a term of art and gained a new figurative meaning. ***Id.*** at 23.

The law of the case doctrine provides, in relevant part, that a lower court is prohibited from reopening issues that were decided by a higher court in an earlier appeal in the same case. *See Heart Care Consultants, LLC v. Albataineh*, 239 A.3d 126, 131 (Pa. Super. 2020). However, the prohibition corresponding to the law of the case doctrine applies only where the appellate court actually ruled on the issue in question. *See id.*

In the instant case, the *Gourmet I* Court concluded as follows:

> There is enough evidence in the record, which, if believed, would permit a reasonable fact-finder to conclude that the deed restrictions prohibit mushroom growing and that the deed restrictions would apply to Gourmet's proposed land development plan for the restricted properties. Thus, we hold that there is a dispute of material fact as to what "mushroom house" means and whether the deed restrictions apply to Gourmet's proposed land development plan. Accordingly, we affirm the trial court's order denying the Neighbors' motion for summary judgment, reverse the trial court's order granting Gourmet's motion, and remand for proceedings consistent with this memorandum.

*Gourmet I*, 2019 WL 3854930, at *7 (footnote omitted).

This text reflects the *Gourmet I* Court's conclusion that there was an issue of fact precluding summary judgment.[4] *Gourmet I*, 2019 WL 3854930,

---

[4] The standard of review this Court applies when reviewing an order granting summary judgment is as follows:

> We may reverse if there has been an error of law or an abuse of discretion. Our standard of review is *de novo*, and our scope plenary. We must view the record in the light most favorable to the non[-]moving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Furthermore, [in] evaluating the trial court's

*(Footnote Continued Next Page)*

at *7. However, **Gourmet I** did not direct the trial court to believe or accept the Neighbors' assertion concerning the definition of mushroom house. Further, the **Gourmet I** Court did not rule that the term mushroom house was ambiguous as a matter of law or in a manner that could be construed as the law of the case. Indeed, the **Gourmet I** Court did not "rule" on this issue at all. **See Heart Care Consultants, LLC**, 239 A.3d at 131.

Instead, the **Gourmet I** court applied the summary judgment standard of review and concluded that there was an issue of material fact concerning the parties' "competing definitions of 'mushroom house.'" **Gourmet I**, 2019 WL 3854930, at *7. The Court noted that if the finder of fact believed the Neighbors' assertion regarding the meaning of mushroom house, then the term mushroom house **may** be ambiguous. **Gourmet I**, 2019 WL 3854930, at *7. Therefore, the **Gourmet I** Court remanded the matter for the trial court to determine whether the term mushroom house was unambiguous or

_____

decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

**Carlino E. Brandywine, L.P. v. Brandywine Vill. Ass'n**, 197 A.3d 1189, 1199-1200 (Pa. Super. 2018) (citation omitted).

whether, as the Neighbors asserted, the definition of mushroom house was a term of art describing multiple phases of the mushroom growing process. *Id.* at *6. On remand, the trial court conducted a two-day non-jury trial where the parties had the opportunity to make arguments as to whether the term mushroom house had gained a figurative definition beyond the deed restrictions.[5] Trial Ct. Op., 3/18/21, at 1.

Following our review, we conclude that the *Gourmet I* Court's ruling on summary judgment did not establish the law of the case. Further, the *Gourmet I* Court did not rule that the term mushroom house was ambiguous. Therefore, on this record, we conclude that the Neighbors' law-of-the-case argument fails and no relief is due.

### Ambiguity of the Meaning of Mushroom House

In the next part of its first issue, the Neighbors contend that the trial court erred when it concluded that the term mushroom house was unambiguous and that the meaning of mushroom house could be determined without looking beyond the language of the deed restrictions. The Neighbors' Brief at 35. The Neighbors assert that the language in the deed restrictions is ambiguous. *Id.* Therefore, the Neighbors argue that trial court applied the wrong standard and scope of review, and that the trial court should have looked outside of the deed restrictions and considered all the attending

---

[5] We note that if the *Gourmet I* Court ruled that mushroom house was ambiguous as a matter of law, there would have been no need to remand on that issue.

circumstances existing at the time of the execution of the deed. *Id.* However, aside from reiterating their law-of-the-case argument, the Neighbors offer no further support for this claim.

"The same principles that apply to the interpretation of a contract apply to the interpretation of a deed." ***Starling v. Lake Meade Property Owners Assoc., Inc.***, 162 A.3d 327, 341 (Pa. 2017) (citation omitted). "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." ***Lenau v. Co-eXprise, Inc.***, 102 A.3d 423, 430 (Pa. Super. 2014) (citation and quotation marks omitted).

When reviewing the interpretation of deed restrictions or restrictive covenants, this Court has explained:

> The interpretation of any contract is a question of law for the Court. As a general rule of contract interpretation, the intention of the parties at the time the contract is entered into governs. The same is true in interpreting restrictive covenants. However, there is an important difference in the rule of interpretation as applied to restrictive covenants on the use of land. Restrictive covenants are limitations on a person's free and unconstrained use of property. [These restrictions] are not favored by the law, yet they are legally enforceable. As such, they are to be strictly construed against persons seeking to enforce them and in favor of the free and unrestricted use of property.
>
> As a matter of law, nothing short of a plain disregard of the restrictive covenant's express terms can create violation of the covenant. In deciding whether there has been a plain disregard of a restrictive covenant, the court must rely upon the ordinary meaning of the language used in the covenant to ascertain the parties' intent, and cannot enlarge by implication a restraint on the use of land.

- 15 -

In order to ascertain the intentions of the parties, restrictive covenants must be construed in light of: (1) their language; (2) the nature of their subject matter; (3) the apparent object or purpose of the parties; and (4) the circumstances or conditions surrounding their execution.  Pennsylvania courts will enforce a restriction if a party's actions are in clear defiance of the provisions imposed by the covenant.  The courts will also enforce a restrictive covenant where it is established that the restriction is still of substantial value to the owners of the restricted tract.

When the restrictive covenant is unambiguous, the Court's review is limited to the confines of the covenant . . . the court need not stray beyond the confines of the restriction to find its meaning.  If restrictions are not ambiguous, the intent of the parties should be gained from the writing itself.[]

*Pocono Summit Realty, LLC v. Ahmad Amer, LLC*, 52 A.3d 261, 269 (Pa. Super. 2012) (formatting altered and citations omitted).  "However, when ambiguity exists, every doubt and ambiguity in a restrictive covenant's language will be resolved in favor of the owner."  *Id.* (citation omitted). Moreover, if ambiguity exists, "then all of the attending circumstances existing at the time of the execution of the instrument should be considered to aid in determining the apparent object of the parties."  *Starling*, 162 A.3d at 341 (citations omitted).

Here, following this Court's remand in *Gourmet I*, the trial court permitted additional discovery, and it held a two-day trial.  After reviewing the evidence, the trial court concluded that the Neighbors failed to prove that mushroom house was a term of art or that it had gained a figurative meaning beyond the plain definition.  Trial Ct. Op. at 12-13, 19.  Likewise, the trial court found no support for the Neighbors' argument that mushroom house had an additional meaning beyond the terms of the deed restriction.  *Id.* at

12, 19. Therefore, the trial court concluded that there was no ambiguity concerning the definition of mushroom house. *Id.* at 15.

In its order disposing of the Neighbors' post-trial motions, the trial court pointed out that the Neighbors "conflate[d] the standard to be applied when interpreting a restrictive covenant with the standard to be applied if it is determined that there is an ambiguity." Order, 6/14/21, at n.1. Further, the trial court reiterated that there was no ambiguity in the meaning of the term mushroom house.

Specifically, the trial court explained:

The language at issue is:

> ALSO UNDER AND SUBJECT to the provision that no mushroom houses shall be erected or maintained upon the above-described premises by said Grantees, their heirs, assigns or occupiers of said premises.

> UNDER AND SUBJECT, also, to the restriction that no mushroom house shall be erected on the within conveyed premises for a period of ninety (90) years.

Under this restrictive language, whatever a mushroom house may be, none shall be erected or maintained on the Consolidated Property. Both parties agree that a mushroom house is a light, temperature and humidity controlled four-sided building with a roof in which mushrooms are grown. Both parties agree that Phase I composting cannot and does not occur inside a mushroom house. Gourmet argues that a mushroom house is nothing more than the structure, the building itself. The Neighbors argue that in addition to the building, the term "mushroom house" encompasses the area outside of and immediately adjacent to the building, known as a pad, where Phase I composting and other activities related to growing mushrooms take place. Gourmet proposes the development of a Phase I composting facility on the Consolidated Property. Gourmet will not grow mushrooms on the Consolidated Property and will not erect buildings in which mushrooms are grown. The structures proposed for the Phase I

- 17 -

composting facility are either a concrete slab wharf or a three-sided partially enclosed bunker with aerated floors, both suitable for Phase I composting only and not mushroom growing.

Trial Ct. Op., 3/18/21, at 8-9 (some formatting altered). The trial court further stated:

The term "mushroom house" has an ordinary and commonly understood meaning as a four-sided, roofed building that is light, temperature and moisture controlled and suitable for growing mushrooms. There is no credible evidence that "mushroom house" was legal shorthand for the process of growing mushrooms.

All the words in the deed restrictions have meanings that are clear and unambiguous and as such compel a literal interpretation. *See Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) ("In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning."). In such circumstances, the court is limited to the confines of the instrument and there is no reason to stray beyond the confines of the instrument to find meaning. *Richman* [*v. Mosites*], 704 A.2d [655,] 658 [(Pa. Super. 1997)].

Since the language and the subject matter of the deed restrictions is clear, for the Neighbors to make their case it is incumbent upon them to show that there was some object or purpose, not literally expressed, either in meaning or as a result of surrounding circumstances, that would support the implied meaning they assert. There is no credible testimony or evidence that in the early to mid-1950's anyone used the term "mushroom house" to reference a use or the process of growing mushrooms. To override the clearly expressed and understood meaning of "mushroom house" as a building, in favor of an implied meaning as a use or process, is contrary to the holding in *Richman*, 704 A.2d [at] 655.

Trial Ct. Op., 3/18/21, at 19-20 (formatting altered).

Following our review of the record, we agree with the trial court's conclusions. Although the Neighbors called Attorney L. Peter Temple as an

- 18 -

expert witness in real estate to support their claim that mushroom house was a term of art encompassing the mushroom growing process,[6] the trial court did not find Attorney Temple's testimony credible. *See Century Indem. Co.*, 173 A.3d at 802 (stating that credibility is for the trial court as the finder of fact). Additionally, the Neighbors do not dispute that a mushroom house is four-sided building with a roof, and it is light, temperature, and moisture controlled for growing mushrooms. Trial Ct. Op., 3/18/21, at 8-9. Considering the undisputed and plain definition of mushroom house, and with no credible evidence to the contrary, the trial court found that mushroom house does not have a figurative meaning, nor is it a term of art. *Id.* at 19-20. Rather, the trial court concluded that a mushroom house is a building for growing mushrooms. *Id.*

On this record, we discern no error of law in the trial court's conclusion that the term mushroom house was unambiguous. Therefore, there was no need for the trial court to look beyond the deed to interpret the term mushroom house. *Pocono Summit Realty, LLC*, 52 A.3d at 269; *Starling*, 162 A.3d at 341. Accordingly, the Neighbors' claim fails and no relief is due.

**Deed Restrictions**

The Neighbors next contend that the trial court erred when it concluded that the deed restrictions were "building restrictions" rather than "use

---

[6] N.T., 2/10/21, at 51. We note that Gourmet conceded that Temple was "real estate" expert, but it objected to Attorney Temple being considered a "mushroom industry" expert." *Id.* at 55. The trial court overruled the objection but took the matter under advisement. *Id.* at 55-56.

restrictions." The Neighbors' Brief at 41-42. The Neighbors assert that the deed restrictions were intended to preclude the use and maintenance of buildings and accessory structures used for the process of growing mushrooms. *Id.* at 42-43.

"[R]estrictive covenants are divided into two categories, building restrictions and use restrictions." *Richman*, 704 A.2d at 658 (citation omitted). "Building restrictions are concerned with the physical aspect or external appearance of the buildings. . . . Use restrictions involve the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein." *Id.* (formatting altered and citation omitted). "[When] a restriction refers to what may be erected on the property, it is a building restriction; to create a use restriction, the deed's language must squarely address the use or manner of occupation of the property." *Groninger v. Aumiller*, 644 A.2d 1266, 1267 (Pa. Super. 1994) (citing *Jones v. Park Lane for Convalescents*, 120 A.2d 535, 538 (Pa. 1956)). "A building restriction and a use restriction are wholly independent of one another, and in view of the legal principles above stated, the one is not to be extended so as to include the other unless the intention [to do so] is expressly and plainly stated; to doubt is to deny enforcement." *Jones*, 120 A.2d at 538.

As stated above, the deed restrictions in the instant matter provide as follows:

ALSO UNDER AND SUBJECT to the provision that no mushroom houses shall be erected or maintained upon the above-described premises by said Grantees, their heirs, assigns or occupiers of said premises.

UNDER AND SUBJECT, also, to the restriction that no mushroom house shall be erected on the within conveyed premises for a period of ninety (90) years.

Trial Ct. Op., 3/18/21, at 2 (quoting 1951 "Irwin Property" Deed, and 1955 "Shoun Tract" Deed). The trial court concluded that there was no credible evidence that the words "mushroom house" referred to a use or the mushroom growing process. *Id.* at 20. The trial court further explained:

The deed restrictions refer to a building and not a use. The Neighbors assert a substantially broadened definition for the term "mushroom house" and in so doing delete the words "erect", "maintain" and "house" from the deeds and add the words "entire", "growing operation" and "composting" to read the deed restrictions to preclude "the entire mushroom growing operation including composting" on the Consolidated Property. The Neighbors advocate rewriting and adding omitted words to the deed restrictions, which is contrary to the holding in *Siciliano* [*v. Misler*], 160 A.2d [422,] 425 [(Pa. 1960)] ("The analysis of the language set out above satisfies us that the appellants' view of the words themselves is clear and that the appellees' is not, unless the words are added to.") The Neighbors seek an overbroad, unreasonable, and impermissible expansion of the literal language of the deeds.

If the Kirkmans wished to prohibit more than a building, they could have added "mushroom growing" or "preparation of compost" to the deed restriction, but the only qualifying terms they chose to employ was "erect" and "maintain." Had the Kirkmans wished to preclude mushroom growing and/or composting on their property, they only needed to say so. The words of a restrictive covenant must be self-sustaining. *Siciliano*, 160 A.2d at 425.

The court may not attempt to remedy omissions of those creating restrictive covenants and extend, by implication, restraint on use of land. *Richman*, 704 A.2d 655.

- 21 -

Phase I composting, while a stage in the growing of mushrooms, is an activity that cannot take place inside a mushroom house and can be and was in the early to mid-1950's conducted separate and apart from mushroom growing.

Activities occurring on adjacent or nearby unrestricted land are irrelevant to the application of the restrictive covenant to the restricted land since the restrictions run with the land and are not personal to a common owner.

The Phase I composting facility proposed by Gourmet for development of the Consolidated Property is not a "mushroom house" as the term was understood and used at the time the deed restrictions were imposed. Therefore, the construction and operation of the Phase I composting facility, with a concrete slab wharf or within a three-sided partially enclosed bunker with aerated floors, will not violate the deed restrictions.

Trial Ct. Op., 3/18/21, at 20-21 (formatting altered).

After review, we agree with the trial court's finding that "[t]he deed restrictions in the matter before us address only the erection and maintenance of a type of building, a mushroom house, and do not address a use." Trial Ct. Op., 3/18/21, at 14. By their terms, the deed restrictions prohibit a mushroom house on the property, which constitutes a building restriction, not a use restriction. Further, although the deed states that mushroom houses cannot be erected or maintained on the property, there is no restriction against a Phase I composting facility. On this record, the Neighbors are due no relief.

**Adjacent Land**

In their final issue, the Neighbors assert that Gourmet intends to use the deed-restricted property to supply compost to its entire integrated mushroom growing operation. The Neighbors' Brief at 43-44. The Neighbors contend that deed restrictions "prevent an accessory necessary component of

a restricted use even when the principal restricted use is on an adjacent property not subject to the deed restriction." *Id.* at 44 (citing *Pocono Summit Realty, LLC*, 52 A.3d at 265-266).

In *Pocono Summit Realty, LLC*, a panel of this Court concluded that where a deed restriction prohibits not only a grocery store building but the "operation of a . . . grocery store," it also prohibited parking facilities and storm water management facilities for a grocery store because those ancillary facilities were a "necessary component" of the operation of a grocery store. *Pocono Summit Realty, LLC*, 52 A.3d at 266. Therefore, the Court *Pocono Summit Realty, LLC*, concluded that the deed restriction at issue in that case expressly forbade "the operation" of a grocery store, and not merely the store's physical structure. *See id.* at 268.

After review, we conclude that *Pocono Summit Realty, LLC* is distinguishable from the instant case. Additionally, we agree with the trial court that the activities occurring on land adjacent to the subject property are irrelevant to the application of the instant deed restrictions. Trial Ct. Op., 3/18/21, at 21.

Here, the deed restrictions prohibit a mushroom house, which is a physical structure. Unlike the situation in *Pocono Summit Realty, LLC*, here, there is no restriction on the **operation** of the mushroom growing process. Phase I composting facilities are not a "necessary component" of a mushroom house, the prohibited structure. Although Phase I composting facilities are a component of the mushroom growing process, by its terms, the

- 23 -

deed restrictions clearly do not restrict the "operation" of a mushroom growing process, only a mushroom house itself. Therefore, the Neighbors' claim fails and no relief is due.

## Conclusion

In conclusion, we discern no error of law or abuse of discretion in the trial court's findings or legal conclusions. The **_Gourmet I_** Court did not conclude that the term mushroom house was ambiguous as a matter of law, nor did the Court's ruling on summary judgment become the law of the case. Although we appreciate and understand Neighbors' arguments, the trial court reviewed the evidence and concluded that the term mushroom house was not ambiguous, and therefore, the trial court did not need to look beyond the language of the deed restrictions to discern the meaning of mushroom house. Moreover, the deed restrictions by their plain language were building restrictions and not use restrictions, and the deed restrictions prohibited mushroom houses. However, aside from the erection and maintenance of mushroom houses, there was no restriction on using the subject property as part of the mushroom growing process, including Phase I composting. For these reasons, we affirm the judgment entered in favor of Gourmet.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2022