J-S19013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BANK OF AMERICA, N.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARL E. MONDERO | : | |
| | : | |
| Appellant | : | No. 120 EDA 2025 |

Appeal from the Judgment Entered February 7, 2025
In the Court of Common Pleas of Carbon County Civil Division at No(s):
22-0548

BEFORE:  PANELLA, P.J.E., STABILE, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED JUNE 23, 2025**

Carl E. Mondero appeals from the judgment entered against him on February 7, 2025,[1] in the amount of $27,940.63 for failure to pay his credit card debt in this breach of contract action. Mondero alleges the trial court erred in finding Bank of America, N.A. established the existence of a contract. After careful review, we affirm.

The trial court set forth the relevant factual and procedural history:

_____

[1] Originally, Mondero filed an appeal from the trial court's December 11, 2024, order denying his post-trial motions. "Such an appeal would be interlocutory absent final judgment and this Court would be without jurisdiction to hear it." ***Drum v. Shaull Equipment and Supply Co.***, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001) (citation omitted). On February 4, 2025, this Court issued an order upon Mondero directing him to praecipe the trial court prothonotary to enter judgment. ***See*** 2/4/25 Order (single page). Mondero complied and judgment was entered on February 7, 2025. This subsequent entry of judgment perfected the appeal and allows us to reach the merits. ***See id.*** The caption has been corrected accordingly.

On April 11, 2022, the Plaintiff, Bank of America, N.A. filed a complaint sounding in breach of contract against the Defendant, Carl E. Mondero[,] claiming Mondero failed to pay in accordance with the terms of the agreement in the sum of $27,986.41. After partially sustaining Mondero's preliminary objections, Bank of America filed an amended complaint to which Mondero filed an answer and new matter. Eventually, after a non-jury trial, th[e trial c]ourt entered a verdict in favor of Bank of America and against Mondero in the amount of $27,940.63.

At this trial, Bank of America presented one witness, Bruce Van Klee[c]k (hereinafter "Van Klee[c]k"). Van Klee[c]k testified as to a number of exhibits, six in total, which formed the basis for the contract, the breach of said contract by Mondero and the resultant damages from this breach.

Plaintiff's Exhibit #1 was a copy of an information sheet containing dat[a] obtained during the application process. This included demographic and financial information provided by the consumer, in this case Mondero, which forms the basis of his request for credit. It is this request made on or about June 21, 2008 which allows for the credit card company to decide if it was appropriate to advance credit to a consumer. On June 23, 2008, this request for credit was approved and the credit card was eventually sent to Mondero for his use.

Bank of America, through Van Klee[c]k, presented Plaintiff's Exhibit #2, which was a copy of the 2007 Bank of America credit card agreement that would have been in place at the time Mondero applied for and was extended credit in 2008. This multiple page document was sent to Mondero outlining the terms and conditions of the agreement between the parties pertaining to the use of the credit card. Mondero's name appears on the first page of this agreement and the last four numbers of the credit card itself, along with other identifying information, including the approval month and year (0608) of the application appears on the last page. Additionally, on page 12 it makes reference to "FIA Card Services N.A. being also known as Bank of America."

Van Klee[c]k was then presented with Plaintiff's Exhibit #4. These documents were identified as various documents which changes the terms and conditions of the original card holder agreement over the years. These were periodically sent to Mondero at his address in Weatherly.

Van Klee[c]k next testified about a packet of documents collectively identified as Plaintiff's Exhibit #5. These documents were copies of monthly billing statements sent from Bank of America to Mondero over the years. The first of these documents is for the billing period ending August 18, 2016 and actually showed a credit to Mondero in the amount of $184.50. These statements ran through January 21, 2022 which showed a balance of $27,986.41.[a] This January 21, 2022 statement was the last statement sent and the balance claimed to be owed Bank of America by Mondero.

> [a] This amount was reduced at trial to $27,940.63 due to a credit of $45.78 being applied against the $27,986.41 balance through the Bank's charge off process.

After rendering a verdict in favor of Bank of America and against Mondero in the amount of $27,940.63, Mondero filed a timely post-trial motion which th[e trial c]ourt summarily denied.

On January 6, 2025, Mondero filed a timely appeal.[2] Th[e trial c]ourt issued its [Rule] 1925(b) [o]rder on January 14, 2025 and Mondero filed his [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal on January 17, 2025. In that statement, Mondero raised a series of perceived errors centered around his claim that the Plaintiff failed to prove a breach of contract occurred. …

Trial Court Opinion, 3/4/25, at 1-4 (some footnotes omitted).

All Mondero's issues can be combined into one question: did Bank of

America prove the required elements for breach of contract?[3]

_____

[2] As previously noted, Mondero's appeal was premature, as judgment had not yet been entered on the verdict. However, this error was remedied by Mondero filiing a praecipe for judgment on February 7, 2025.

[3] Mondero does raise a claim regarding whether Bank of America presented sufficient evidence to find any other cause of action, however, the trial court clearly found sufficient evidence only for a breach of contract. **See** Appellant's

*(Footnote Continued Next Page)*

We begin with our standard of review:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. …
>
> Moreover, the trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

*Century Indemnity Company v. OneBeacon Insurance Company*, 173 A.3d 784, 802 (Pa. Super. 2017) (brackets, quotation marks, and citations omitted). Furthermore, "all evidence and proper inferences favorable to [the prevailing party] must be taken as true and all unfavorable inferences rejected." *Discover Bank v. Booker*, 259 A.3d 493, 495 (Pa. Super. 2021) (citation omitted).

Mondero asserts Bank of America did not prove the required elements of breach of contract. There are "[t]hree elements [] necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

---

Brief, at 17; Trial Court Opinion, at 10-11 ("Mondero may rest assure[d] that th[e trial c]ourt did not decide this on any other legal theory than breach of contract."). We therefore do not address this alternative claim.

- 4 -

contract and (3) resultant damages." ***Id.*** (internal quotation marks, brackets, and citation omitted). "It is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." ***Id.*** at 495-96 (brackets and citation omitted). "A party claiming [a breach of contract] must establish its elements by a preponderance of the evidence." ***Id.*** at 496 (citation omitted).

> Before a contract can be found, all of the essential elements of the contract must exist. Therefore, in determining whether an agreement is enforceable, we must examine whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed. If all three of these elements exist, the agreement shall be considered valid and binding.

***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 516 (Pa. Super. 1995) (*en banc*) (citation omitted).

> Stated another way:

> We will find the parties' agreement enforceable as a contract when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity. An agreement is expressed with sufficient clarity if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy. Accordingly, not every term of a contract must always be stated in complete detail. If the parties have agreed on the essential terms, the contract is [enforceable] even though recorded only in an informal memorandum that requires future approval or negotiation of incidental terms. In the event that an essential term is not clearly expressed in their writing but the parties' intent concerning that term is otherwise apparent, the court may infer the parties' intent from other evidence and impose a term consistent with it. Indeed, terms of an agreement that appear otherwise vague may be rendered definite by subsequent performance: One or both parties may perform in such a way as to make definite that which was previously unclear.

***Helpin v. Trustees of University of Pennsylvania***, 969 A.2d 601, 610-11

(Pa. Super. 2009) (quotation marks, brackets, and citations omitted).

Bank of America presented multiple documents to support the existence

of a contract. The trial court aptly found these documents, collectively, formed

the contract:

> The documents produced, as [the trial court] determined, collectively created the contract: the request for credit (Plaintiff's Exhibit #1) and the subsequent tender to Mondero of the then existing terms and conditions upon use of the credit card (Plaintiff's Exhibit #2) and the credit card itself. Thus, the first element of a breach of contract action is present.

Trial Court Opinion, 3/4/25, at 11. We agree these documents, combined with

Mondero's subsequent use and payments on the credit card, established the

parties' intent to be bound by the terms of the agreement, sufficiently definite

terms, and consideration. The trial court's findings of fact are supported by

the record and free from legal error.

Mondero asserts there was no evidence he applied for a credit card and

the documents produced did not include the original credit card application.

***See*** Appellant's Brief, at 8-9. Mondero further asserts, with citation to a Court

of Common Pleas case, that the original card member agreement must be

produced to establish formation of a contract. ***See id.*** at 11-12.

We remind Mondero that trial court decisions are not binding on this

Court. ***See Klar v. Dairy Farmers of America, Inc.***, 268 A.3d 1115, 1127

(Pa. Super. 2021) ("[W]e are not bound by decisions of the Court of Common

Pleas, even if directly on point.") (citation and internal quotation marks omitted). After our own research, we have not found any support for Mondero's claim that the original card member agreement must be produced to establish formation of a contract. Moreover, Bank of America did admit into evidence the original card holder agreement in this case as Exhibit 2. *See* N.T. Trial, 9/13/24, at 6-7. All exhibits were admitted at trial without objection. *See id.* at 22. Therefore, this claim does not merit any relief.

Mondero next claims Bank of America did not sufficiently prove the amended terms and conditions and statements were mailed to Mondero. *See* Appellant's Brief, at 12-17. We find these claims specious. As noted above, copies of monthly billing statements sent from Bank of America to Mondero over the years, ending on January 21, 2022 which showed a balance of $27,986.41, were entered into the record without objection. *See* N.T. Trial, 9/13/24, at 22. All exhibits were admitted and relied upon by the trial court. This evidence was uncontracted; no evidence was presented that Mondero did not receive the amended terms and conditions and the monthly statements.

Furthermore, we have consistently held that the conduct of a party can evidence a party's intent to be bound by a contract. *See Booker*, 259 A.3d at 496 ("a contract may be manifest … as an inference from the acts and conducts of the parties") (citation omitted). Mondero received the credit card in 2008. He used the credit card rather quickly after receiving it. He paid on the credit card, including to the point of having a credit of $184.50 in August

of 2016. Throughout the next five years, Mondero continued to use the credit card and make payments on the credit card. Mondero continued to pay on the credit card through June of 2021.

As noted by the trial court, this Court has previously held that a party's behavior "in continuing to use the card and comply with its terms for so long, strongly evidences [the party's] acquiescence to the contract's terms[.]" Trial Court Opinion, 3/4/25, at 12 (quoting **Booker**, 259 A.3d at 496-97). Mondero's actions of using the credit card and paying on the balance over the course of many years evidences his agreement to be bound by the credit card's terms. Therefore, we agree with the trial court that Bank of America met its burden of establishing the existence of a contract, the subsequent breach thereof when Mondero stopped paying on the credit card account, and damages in the amount of $27,940.63.

Finding no error in the trial court's analysis. We affirm.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/23/2025